This is a case presenting questions of first impression under the Motor Fuel Marketing Act (MFMA), which is codified at Ala. Code (1975), §§ 8-22-1 through -18.
The State filed the present action against Star Service 
Petroleum Company, Inc. (Star), charging that Star had violated the MFMA by selling motor fuel below cost and thereby injuring competition. Following an ore tenus trial, the trial court held that Star had violated the MFMA, and it granted injunctive relief.
Star appeals. We affirm.
The purpose and intent of the MFMA is "to encourage fair and honest competition, and to safeguard the public against creation of monopolies or unfair methods of competition, in transactions involving the sale of . . . motor fuel in the wholesale and retail trades in this state." Ala. Code (1975), § 8-22-3.
To carry out the purpose of the MFMA, § 8-22-3 declares that "the advertising, offering for sale, or sale of motor fuel below cost . . . with the intent of injuring competitors ordestroying or substantially lessening competition is an unfair and deceptive trade practice." (Emphasis supplied.) *Page 128 
Ala. Code (1975), § 8-22-6, further provides that "[i]t shall be unlawful for any person engaged in commerce in this state to sell or offer to sell motor fuel below cost . . . where theeffect is to injure competition." (Emphasis supplied.)
Star contends that the trial court erred in holding that it was in violation of the MFMA without making an affirmative finding that Star injured competition. It also argues that it did not violate the MFMA because it did not sell its motor fuel below cost. We will address Star's second contention first.
 I
Star contends that it sold its motor fuel above cost. Its dispute with the State on this basic issue appears to center upon a difference of accounting methods from those the State uses to determine cost. Star contends that in determining its cost it may pool different grades of motor fuel. Put another way, Star contends that it may pool its regular and unleaded gasoline in determining its cost. The State argues that prices and costs must be computed separately for each grade of fuel. We believe the State's position is well-grounded.
The MFMA is silent as to what accounting methods may be used for determining cost, and there is apparently no case law yet addressing this issue. Both parties presented evidence regarding the determination of cost, and, based upon such evidence, the trial court found that Star had violated the MFMA by selling motor fuel below cost.
Where the trial court was sitting without a jury and the evidence was presented to it ore tenus, its judgment is presumed to be correct and will not be set aside by this court absent a showing that the judgment is plainly and palpably wrong, without supporting evidence, or manifestly unjust.Clardy v. Capital City Asphalt Co., 477 So.2d 350 (Ala. 1985);Romine Construction Co. v. Ted Warnke, Inc., 477 So.2d 345
(Ala. 1985).
We cannot say that the trial court's conclusion that Star sold its motor fuel below cost is plainly and palpably wrong, without supporting evidence, or manifestly unjust. In particular, we note an attorney general's opinion letter, dated December 21, 1984, which the State introduced into evidence. In that letter the attorney general's office opined that the MFMA "does not permit a marketer of motor fuel to 'pool' profit margins on sales of different grades of motor fuel when such pooling results in the sale of any grade of fuel below cost." This conclusion of the attorney general appears to be sound.
Star also contends that in determining its cost it could allocate expenses between the convenience store at the Mobile station and gasoline sales. We find no need to elaborate on this contention. Suffice it to say that there was evidence presented to the trial court which supports its conclusion that such allocation of expenses was not proper and that Star had sold its motor fuel below cost.
 II
Star's primary contention on appeal is that the trial court erred in holding it to be in violation of the MFMA without making an affirmative finding that it had injured competition. Star contends that, in order for the MFMA to be upheld as constitutional, it must be construed to require a finding of injury to competition for a violation of its provisions to occur.
We find it unnecessary to address Star's elaborate constitutional arguments because we find that the record supports the conclusion that Star's sale of motor fuel below cost did injure competition. We will simply assume for purposes of this opinion that the MFMA does require a showing of injury to competition for a violation of the act to occur.
Star is correct in its assertion that the trial court did not make an affirmative finding of injury to competition in its final judgment. Simply because the court did not set forth in detail its findings, however, does not mean that it did not find that Star had injured competition in the motor fuel market. The MFMA does not require that *Page 129 
a court set forth its findings of fact and conclusions of law.
Moreover, where the trial court does not set forth specific findings of fact, as in this case, this court will assume that it made those findings that were necessary to support the judgment, unless those findings would be clearly erroneous and against the great weight of the evidence. Smith v. CiticorpPerson-To-Person Financial Centers, Inc., 477 So.2d 308 (Ala. 1985); Dutton v. Chester F. Raines Agency, Inc., 475 So.2d 545
(Ala. 1985). Cf. Cole v. Racetrac Petroleum, Inc., 466 So.2d 93
(Ala. 1985).
After reviewing the record in this case, we cannot say that a finding that Star's actions injured competition would be clearly erroneous or against the great weight of the evidence.
Star is an Illinois corporation with its home office located in St. Louis, Missouri. At the time of trial, Star was operating 114 service stations in 13 states. One of those stations is located in Mobile, Alabama, and it is the pricing of motor fuel at this station which is the subject of this case.
The evidence shows that during July 1985, Star lowered the selling price of motor fuel at its Mobile service station, a trend which was largely followed by the surrounding stations. As discussed above, the price set by Star for the sale of motor fuel at that time was "below cost," as that term is used in the MFMA.
Maxine Copeland, the owner of Copeland Oil and Gas, which operates a Starvin Marvin's service station one block away from Star's Mobile station, testified that it appeared to her that Star had led the downward trend in the price of gasoline. In response to the question of how Star's pricing of gasoline had affected her business, Copeland stated that she was "actually losing money."
James E. McGuire, the principal officer of McGuire Oil Company, testified that he had surveyed the service stations within a one-mile radius of Star's Mobile station and that Star's pricing of motor fuel had a "domino effect":
 "[W]henever they lower their price like they did, it moves in every direction down every street and, you know, it finally reaches — . . . four or five days later when Kayo or Jet or Coneco, whoever they are, reacted to it on both sides of one of my locations, then it began to affect that location, and now it's spread further and further. Every day, it gets more and more of the market."
McGuire further testified that Star's actions had "definitely injured my business."
It is this court's opinion that the evidence presented to the trial court, particularly the testimony of Star's competitors, such as that set forth above, supports a finding that Star's pricing and selling of motor fuel below cost had injured competition at least in the area of Mobile surrounding its service station.
Certainly, one could interpret the evidence differently, but it was for the trial court sitting without a jury to weigh and interpret the evidence. As we have already stated, we will not reverse that court's judgment rendered after an ore tenus
trial, unless it is plainly and palpably wrong, without supporting evidence, or manifestly unjust. Clardy,477 So.2d 350; Romine Construction Co., 477 So.2d 345.
Star contends, however, that the evidence shows only that one or two of its competitors were injured by its actions and that such is not sufficient to establish injury to competition, or the competitive process. See Simonetti, Inc. v. State ex rel.Gallion, 272 Ala. 398, 132 So.2d 252 (1961).
The distinction Star makes between injury to competitors and injury to the competitive process is part of its broader contention that for the MFMA to be constitutionally sound it must be construed as requiring a showing of injury to competition itself, not just to competitors. See Simonetti,272 Ala. at 408, 132 So.2d at 263.
We find it unnecessary to address this contention because we find that the evidence goes further than showing merely injury to Star's competitors. In our opinion the evidence shows an injurious effect on the motor fuel market in the area surrounding *Page 130 
the store, as smaller competitors found it necessary to sell motor fuel below cost in order to maintain volume. The testimony of McGuire and Copeland indicated that this trend had the potential of covering an increasing area.
We agree with Star that it is part of the normal competitive process for competitors to be "injured" when they lose customers to a marketer who offers the public a lower price. Such "injury" is not what the MFMA addresses. Rather, it is injury to competition (which necessarily includes injury to competitors) due to certain unlawful sales tactics, such as selling motor fuel below cost, as in this case.
 III
Star's final contention on appeal is that it is exempt from the application of the MFMA because it is in reorganization under Chapter 11 of the United States Bankruptcy Code.
Ala. Code (1975), § 8-22-12(a)(5), provides that the MFMA does not apply to a sale made "[w]here motor fuel is advertised, offered for sale, or sold by any fiduciary or other officer under the order or direction of any court." Star contends that its management is acting as a debtor in possession under Chapter 11 and that, as such, its management was acting as a fiduciary under the supervision and direction of the bankruptcy court in pricing its motor fuel. See 11 U.S.C. § 1107 (1979). Thus, Star claims that it is exempt under § 8-22-12(a)(5).
This court has found no Alabama case law addressing the issue of exemptions from the MFMA. We will thus endeavor to construe § 8-22-12(a)(5) by resorting to rules of statutory construction. In doing so, we find persuasive the State's argument that paragraph (a)(5) of § 8-22-12 should be construed by considering the statute in its entirety and by giving effect to every word where possible. Director of State Department ofIndustrial Relations v. Winston County Commission,468 So.2d 177 (Ala.Civ.App. 1985).
We agree with the State that, viewing § 8-22-12 in its entirety, the purpose of the statute appears to be to provide exemptions for unusual sales of motor fuel — those not in the ordinary course of the marketer's business. Compare §8-22-12(a)(1) with § 8-22-12(a)(4).
While Star's management, as a debtor in possession under Chapter 11, must act in a fiduciary capacity for the bankrupt corporation, its daily pricing of motor fuel at its Mobile service station is a normal activity in the ordinary course of an ongoing business. In our opinion, such day-to-day management decisions should not be viewed as being made "under the order or direction of" the bankruptcy court, as that phrase is used in § 8-22-12(a)(5), and Star is not exempt from the MFMA under that statutory provision.
In thus holding, we note that any other construction of the statutory exemption would appear to this court to be unworkable. Under the construction urged by Star, a marketer of motor fuel could sell such fuel below cost with impunity simply by filing a petition under Chapter 11 of the Bankruptcy Code.
This case is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.