ON APPLICATION FOR REHEARING
This Court's opinion of February 9, 1990, is withdrawn and the following opinion is substituted therefor:
This is an appeal from a judgment in a case involving alleged violations of Ala. Code 1975, § 8-22-1 et seq., the Alabama Motor Fuel Marketing Act ("AMFMA"). The case was tried by the trial judge without a jury. The plaintiff, Charles Gray, owns Hilltop Chevron, a full-service and self-service gasoline station and automotive service facility in Florence. At the time of the events giving rise to this lawsuit (October 1986), Gray's business had been located at 419 South Court Street in Florence for nine years. The defendant corporation, Money Back, Inc., owns and operates self-service gasoline stations/convenience stores. The defendant opened one of its stores across the street from the plaintiff's service station in April 1986, and opened another store approximately two miles away in October 1986.
Also in October 1986, both the plaintiff and the defendant priced their leaded gasoline illegally and they do not dispute that they were selling the gasoline at a price lower than any other competitors. It was at this time that the "price war" began among the defendant and other gasoline dealers similarly situated, but it is also undisputed that the defendant offered gas for sale at this time at a price lower than any other station in Lauderdale County.
Because of a serious decline in his business, the plaintiff sued the defendant, asking for an injunction against the pricing activities of the defendant and for compensatory damages, as provided for in the *Page 326 
AMFMA. After hearing ore tenus evidence, the trial court entered the following judgment:
 "THIS CAUSE was heretofore heard by the court at which time the court received testimony ore tenus and received certain exhibits into evidence. After due consideration thereof and [of] the briefs and arguments of the parties, the court finds as follows:
 "1. The defendant, Moneyback, Inc., stipulated and agreed that in October, November, and December of 1986 it made sales of motor fuel below cost. Alabama Motor Fuel Marketing Act (§§ 8-22-1 through 8-22-18, Code of Alabama 1975).
 "2. Such sales below cost had an injurious effect on a competitor in the same market area, Charles Gray, d/b/a Hilltop Chevron, in that he suffered damages in the amount of $5,409.00.
 "3. The defendant failed to prove a lack of harmful intent in making such sales below cost. To the contrary, the court finds that the defendant made such sales below cost with the intent of injuring competitors or destroying or substantially lessening competition in that it sought to draw customers to its business by making sales of motor fuel below cost and succeeded in such effort.
 "It is therefore ORDERED and ADJUDGED as follows:
 "1. The court finds for the plaintiff and against the defendant and judgment is accordingly rendered in favor of the plaintiff and against the defendant in the amount of $16,227.00. Such sum was arrived at by trebling the actual damages ($5,409.00) pursuant to the provisions of § 8-22-17(b).
 "2. Section 8-22-17(c) provides that the court, in making an award under § 18-22-17(b), may award court costs and reasonable attorneys' fees to the prevailing party. The parties stipulated and agreed that if judgment were entered in favor of the plaintiff, a hearing date would be set by the court to determine the amount of attorneys' fees and court costs, if any, to be awarded to the prevailing party. The court hereby sets the 7th day of July, 1989, at 9:00 A.M., as the date and time for a hearing to determine the amount, if any, of court costs and attorneys' fees to be awarded to the plaintiff.
 "DONE and ORDERED at Florence, Alabama, this the 26th day of June, 1989.
 "/s/ "Donald H. Patterson "Circuit Judge"
The defendant first contends that it was error to deny its motion for summary judgment because of what the defendant claims were fatal deficiencies in the plaintiff's opposition to the motion. The record shows, however, that the plaintiff correctly stated, in his responsive pleading, that his opposition to the motion for summary judgment was based on the "pleadings, affidavit of Charles Gray, the answers to interrogatories, and the deposition of Cecil Henley [defendant's witness]." See Swendsen v. Gross, 530 So.2d 764
(Ala. 1988); Tyler v. Equitable Life Assur. Soc. of the UnitedStates, 512 So.2d 55 (Ala. 1987); and Rule 56, A.R.Civ.P. Further, the evidence adduced by the pleadings of both parties during the consideration of the defendant's motion for summary judgment, the plaintiff's opposition thereto, and the plaintiff's own motion for summary judgment, created a triable issue of fact that the trial court ultimately resolved in favor of the plaintiff.
The case of State ex rel. Galanos v. Mapco Petroleum, Inc.,519 So.2d 1275 (Ala. 1987), controls the disposition of the remaining substantive issues raised by the defendant. In that case, this Court rejected the contention now advanced by the defendant, Money Back: that a plaintiff suing under the AMFMA must prove injurious intent on the part of the defendant seller in order to prove a prima facie case under the statute.
The Mapco Court interpreted the legislatively stated purpose of the act in pari materia with the substantive provisions of the act and held that "ordinary injury to competitors that results from successful efforts to draw customers to one's own *Page 327 
business" is not the result of innocent intent. Therefore, held the Court:
 "It may readily be seen that the legislature has in explicit terms prohibited only sales below cost where the effect is to injure competition. We think that to read the intent provision of § 8-22-3[1] into these provisions so as to place a burden on the State to prove intent would be manifestly contrary to the terms of the Act. However, we do think that the various provisions of the Act can be read together in a way that will save their constitutionality. It is quite consonant with the spirit and terms of the Act to construe it as providing that the State proves a prima facie case when it proves a sale below cost and an injurious effect on competition, and yet as allowing the defendant to prove lack of a harmful intent either in avoidance of liability or in mitigation of any penalty, as the trier of fact shall determine."
519 So.2d at 1286. (Emphasis added.)
The trial court here affirmatively held that the plaintiff had suffered injury to his business and that the defendant had not proved the absence of injurious intent toward the plaintiff. Our standard of review of a judgment entered after an ore tenus hearing (see, e.g., Kershaw v. Knox Kershaw, Inc.,523 So.2d 351 (Ala. 1988)), requires affirmance of the trial court's judgment in favor of the plaintiff in this case, especially in light of the Mapco Court's holding that the resolution of the AMFMA issues presented by this case is the responsibility of the trier of fact — here, the trial court.519 So.2d at 1286.
The issue of damages was developed at trial through the testimony of three expert witnesses. The plaintiff's experts were Dr. Bruce Jones, an associate professor of economics, and Mr. Michael L. Johnson, a C.P.A. The defendant's expert was economist Dr. Michael Butler.
The defendant maintains that the plaintiff's experts' testimony was "speculative" and, therefore, unsupportive of the trial court's damages award. Gray counters by citing this Court's decision in Super Valu Stores, Inc. v. Peterson,506 So.2d 317 (Ala. 1987), in which we adopted the United States Supreme Court's "rule of damages that will control whenever a defendant's wrongful act has made it difficult to show 'with reasonable certainty' the amount of [the plaintiff's] loss." That rule was set out by the United States Supreme Court inStory Parchment Co. v. Paterson Parchment Paper Co.,282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931):
 "[I]t will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that [damages] cannot be measured with the exactness and precision that would be possible if the case, which [the defendant] alone is responsible for making, were otherwise. . . . [T]he risk of the uncertainty should be thrown upon the wrongdoer instead of upon the injured party. . . .
 "Juries are allowed to act upon probable and inferential, as well as direct and positive proof. And when, from the nature of the case, the amount of the damages cannot be estimated with certainty, or only a part of them can be so estimated, we can see no objection to placing before the jury all the facts and circumstances of the case, having any tendency *Page 328 
to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit.
". . . .
 "To deny the injured party the right to recover any actual damages in such cases, because they are of a nature which cannot be thus certainly measured, would be to enable parties to profit by, and speculate upon, their own wrongs, encourage violence and invite depredation. Such is not, and cannot be the law. . . .
 "Damages include those which cannot be ascertained by a fixed rule, but must be matters of opinion and probable estimate. And the adoption of any arbitrary rule in such a case, which will relieve the wrongdoer from any part of the damages, and throw the loss upon the injured party, would be little less than legalized robbery."
282 U.S. at 562-64, 51 S.Ct. at 250-51. See, also,Long-Lewis, Inc. v. Webster, 551 So.2d 1025 (Ala. 1989).
In his supplemental answers to Money Back's interrogatories, Gray stated that his actual damages for the three-month period in question (October, November, and December 1986) totalled $3,262. This figure was obtained by comparing Gray's financial statements for the same three months of 1985 and 1986. At trial, however, Gray's expert, Dr. Jones, testified that his analysis had revealed a consistent upward trend in Gray's business over an extended period of time. Because of Money Back's price-cutting, testified Dr. Jones, the upward trend in Gray's business did not continue during the last three months of 1986; therefore, he said, Gray's actual damages were $5,409. The trial court, pursuant to § 8-22-17(b), exercised its discretion and trebled the actual damages testified to by Dr. Jones and awarded Gray the amount of $16,227.[2]
We believe, under the circumstances of this case and in light of the testimony with regard to damages, that the "upward trend" testimony of Dr. Jones is too speculative to justify the larger actual damages figure of $5,409. We are left, then, with the actual losses testified to by Gray in his supplemental answers to interrogatories ($3,262), which figure, when trebled pursuant to § 8-22-17(b), yields a total of $9,786.
Therefore, our affirmance of the judgment appealed from is conditioned upon Gray's filing with this Court a remittitur of damages in the amount of $6,441 ($16,227 less $9,786) within 28 days from the date of this opinion. Otherwise, the judgment is reversed and the cause is remanded for a new trial.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED CONDITIONALLY.
HORNSBY, C.J., and JONES, SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] That Code section provides:
"It is hereby declared that marketing of motor fuel in Alabama is affected with the public interest. It is hereby declared to be the legislative intent to encourage fair and honest competition, and to safeguard the public against creation of monopolies or unfair methods of competition, in transactions involving the sale of, or offer to sell, or inducement to sell motor fuel in the wholesale and retail sales in this state. It is further declared that the advertising, offering for sale, or sale of motor fuel below cost or at a cost lower than charged other persons in the same marketing level with the intent of injuring competitors or destroying or substantially lessening competition is an unfair and deceptive trade practice. The policy of the state is to promote the general welfare through the prohibition of such sales. The purpose of the Motor Fuel Marketing Act is to carry out that policy in the public interest, providing for exceptions under stated circumstances, providing for enforcement and providing penalties."
[2] After a post-judgment hearing, and in accordance with the parties' earlier stipulation, the trial court also awarded Gray "reasonable attorney fees in the amount of $8,000" and "court costs in the amount of $415.84." These amounts are not disputed on appeal.