612 So.2d 417 (1992)
McGUIRE OIL COMPANY, et al.
v.
MAPCO, INC., and Mapco Petroleum, Inc.
1911143.
Supreme Court of Alabama.
December 18, 1992.
*418 W. Dennis Summers and Ezra B. Jones III of Summers & Jones, P.C., Atlanta, GA, for appellants.
J.P. Courtney III, Wesley Pipes and G. Sage Lyons of Lyons, Pipes & Cook, P.C., Mobile, for appellees.
Linda A. Friedman and Patricia T. Mandt of Bradley, Arant, Rose & White, Birmingham, for amicus curiae American Petroleum Institute.
Douglas E. Jones of Jones & Rogers, Nashville, TN, for amicus curiae Tennessee Oil Marketers Ass'n.
*419 H. Dean Mooty, Jr. of Capell, Howard, Knabe & Cobbs, P.A., Montgomery, for amicus curiae Alabama Oilmen's Ass'n/Alabama Ass'n of Convenience Stores.
James C. Huckaby, Jr., Birmingham, and Robert G. Abrams, William R. O'Brien, Stuart H. Harris and M. Lee Doane, Washington, DC, and Francis J. Devlin, Houston, TX, for amici curiae Exxon Co., U.S.A., Chevron U.S.A. Inc.
S. Allen Baker, Jr., John F. Mandt and Will Hill Tankersley, Jr., Birmingham, and James D. Hurley, Houston, TX, for amici curiae BP Exploration & Oil, Inc. d/b/a BP Oil Co. and Star Enterprise.
KENNEDY, Justice.
McGuire Oil Company, Delta Oil Company, and Diamond Gasoline Stations sued the defendants, Mapco, Inc., and Mapco Petroleum, Inc., alleging violations of the Alabama Motor Fuel Marketing Act ("AMFMA"), § 8-22-1 et seq., Ala.Code 1975. Berwick Oil Company subsequently replaced Delta Oil by stipulation of the parties. The defendants removed the case to a federal court, based on diversity grounds, and counterclaimed against the plaintiffs, claiming violations of the Sherman Anti-Trust Act, 15 U.S.C. § 1 et seq.; the Robinson-Patman Price Discrimination Act, 15 U.S.C. § 13 et seq.; the AMFMA; and the Alabama Unfair Trade Practices Act, § 8-10-1 et seq. The parties stipulated to the dismissal of Mapco, Inc.
The district court entered a summary judgment in favor of the defendant on the plaintiffs' AMFMA claim and entered a summary judgment in favor of the plaintiffs on the defendant's counterclaims. The plaintiffs filed a motion for sanctions under Rule 11, F.R.Civ.P., which was denied by the district court. The Eleventh Circuit Court of Appeals affirmed the district court's summary judgment on the defendant's counterclaim and the denial of the plaintiffs' Rule 11 motion. The Eleventh Circuit certified to this Court the following four questions of law:
"(1) DOES THE AMFMA REQUIRE INJURY TO COMPETITION AS A PREREQUISITE TO LIABILITY UNDER THAT ACT, OR DOES INJURY TO COMPETITORS SUFFICE TO ESTABLISH LIABILITY?
"(2) IF INJURY TO COMPETITION RATHER THAN TO COMPETITORS IS A PREREQUISITE TO LIABILITY UNDER THE AMFMA, WHAT IS THE RELEVANCE OF A DEFENDANT'S MARKET SHARE IN DETERMINING THE EXISTENCE OF INJURY TO COMPETITION?
"(3) IS LACK OF INTENT TO INJURE COMPETITION AN AFFIRMATIVE DEFENSE, PERMITTING SUMMARY JUDGMENT ON THAT ISSUE UNDER THE AMFMA?
"(4) CAN A DEFENDANT UNDER THE AMFMA INVOKE THE `MEETING COMPETITION' DEFENSE CONTAINED IN SECTION 8 OF THAT STATUTE WHEN THE DEFENDANT PRICES MOTOR FUEL ONE OR TWO CENTS BELOW THE PRICE SET BY ITS COMPETITORS?"

FACTS
In order to facilitate a better understanding of the issues before us, we must give a brief explanation of the petroleum industry and the parties involved. Most Alabama businesses selling gasoline are "jobbers" or "dealers." Traditionally, a jobber was a wholesaler of gasoline who purchased gasoline from a major oil company or refiner and then resold the gasoline to independent businesses, called dealers, who sold gasoline to the public. Today, many jobbers also sell gasoline at the retail level through their own outlets, which are primarily "convenience stores." Dealers are usually independent Alabama businesses operating service stations or convenience stores and buying gasoline either from a jobber or directly from a major oil company. The dealer is an independent businessman who must compete with other retailers and sometimes with its own supplier.
All of the plaintiffs are jobbers engaged in the wholesale and/or retail sale of gasoline. *420 Plaintiff McGuire Oil sells Phillips 66 and Citgo gasoline to a number of retail outlets at various locations in the Mobile area. McGuire makes certain sales on consignment and also owns at certain gas stations pumps that it leases to the gas station operators. Plaintiff Berwick Bay distributes Amoco and Shell supplies to retail facilities in Mobile. Berwick Bay sells these major brand gasolines at its 30 "Delta Mart" convenience stores. Plaintiff Diamond Gasoline sells unbranded gasoline at retail under the trade name "Diamond."
The defendant Mapco is an independent or non-brand name gasoline refiner. Mapco also sells non-branded gasoline at the wholesale and retail levels. When this lawsuit began, Mapco had four retail stations in the Mobile area. Two of the stations were charged with violating the AMFMA.
The plaintiffs allege that the defendant sold motor fuel below cost in violation of § 8-22-6, part of the AMFMA. Specifically, the plaintiffs claim that between May 1, 1984, and December 31, 1988, the defendant sold gasoline "below cost" for 596 days at its Old Shell Road retail location and for 821 days at its St. Stephens Road retail location. The plaintiffs estimated their losses due to the conduct of Mapco at $250,000.
A violation under the AMFMA occurs when one party sells gasoline "below its costs." At oral argument, the plaintiffs presented the following chart. We will not discuss the accuracy of these figures, because that issue is not before us.

In the chart, Mapco's costs are $1.04 per gallon and McGuire's costs are $1.09. Note that the AMFMA would not apply unless one of the parties sold gasoline below its own costs.
(1) DOES THE AMFMA REQUIRE INJURY TO COMPETITION AS A PREREQUISITE TO LIABILITY UNDER THAT ACT, OR DOES INJURY TO COMPETITORS SUFFICE TO ESTABLISH LIABILITY?
The plaintiffs argue that § 8-22-4(13), which defines "competition" for the purposes of the AMFMA as including "any person who competes with another person in the same market area at the same level of distribution," clearly protects individual competitors from predatory pricing practices.
The plaintiffs also argue that this Court has construed "injury to competition" to include "injury to a competitor," citing State ex rel. Galanos v. Mapco Petroleum, Inc., 519 So.2d 1275 (Ala. 1987) (hereinafter "Galanos v. Mapco"). The plaintiffs contend that Alabama courts have allowed plaintiffs to recover damages under the *421 AMFMA based on proof of injury to competitors. Money Back, Inc. v. Gray, 569 So.2d 325 (Ala.1990); Star Service & Petroleum Co. v. State ex rel. Galanos, 518 So.2d 126 (Ala.Civ.App. 1986). They also argue that the imposition of a more stringent "injury to competition" standard would defeat the clear purpose of the legislature in enacting the AMFMA.
The defendant argues that § 8-22-6 and § 8-22-9 provide that the sale of motor fuel below cost is unlawful only "where the effect is to injure competition." The defendant also argues that Galanos v. Mapco provides that "an injurious effect upon competition" is an essential element of an AMFMA violation, as opposed to a mere intent to injure individual competitors.
The legislature made the following findings of fact when it enacted the AMFMA:
"(1) Marketing of motor fuel is affected with the public interest;
"(2) Unfair competition in the marketing of motor fuel occurs whenever costs associated with the marketing of motor fuel are recovered from other operations, allowing the refined motor fuel to be sold at subsidized prices. Such subsidies most commonly occur in one of three ways: when refiners use profits from refining of crude oil to cover below normal or negative returns earned from motor fuel marketing operations; where a marketer with more than one location uses profits from one location to cover losses from below-cost selling of motor fuel at another location; and where a business uses profits from nonmotor fuel sales to cover losses from below-cost selling of motor fuel;
"(3) Independent motor fuel marketers (i.e., dealers, distributors, jobbers and wholesalers) are unable to survive predatory subsidized pricing at the marketing level by persons when all of an independent's income comes from marketing operations;
"(4) Subsidized pricing is inherently predatory and is reducing competition in the petroleum industry, and if it continues unabated, will ultimately threaten the consuming public."
§ 8-22-2.
In enacting the AMFMA, the legislature stated its intent:
"To encourage fair and honest competition, and to safeguard the public against the creation of monopolies or unfair methods of competition, in transactions involving the sale of, or offer to sell, or inducement to sell motor fuel in the wholesale and retail trades in this State. It is further declared that the advertising, offering for sale, or sale of motor fuel below cost or at a cost lower than charged other persons on the same marketing level with the intent of injuring competitors or destroying or substantially lessening competition is an unfair and deceptive trade practice."
§ 8-22-3.
This Court stated in Galanos v. Mapco, 519 So.2d at 1285, "[s]ection [8-22-3] declares that the sale of motor fuel below cost `with the intent of injuring competitors or destroying or substantially lessening competition is an unfair and deceptive trade practice.'"
Section 8-22-4 provides that "the following terms shall have the meanings ascribed to them in this section unless otherwise stated and unless the context or subject matter clearly indicates otherwise." Section 8-22-4(13) defines "competition" as "includes any person who competes with another person in the same market area at the same level of distribution."
Section 8-22-6 provides "it shall be unlawful for any person engaged in commerce in this state to sell or offer to sell motor fuel below cost or to sell or offer to sell it at a price lower that the seller charges other persons on the same day and on the same level of distribution, within the same market area, where the effect is to injure competition." Section 8-22-9(1) states that it is unlawful "for any person engaged in commerce in this state to sell or offer to sell motor fuel at wholesale or retail, as the case may be, where the effect is to injure competition."
*422 In construing a statute, the intent of the legislature, as expressed in the statute is ascertained and effectuated, and that intent may be gleaned from considering the language used, the reason and necessity for the act, and the goals sought to be accomplished. McClain v. Birmingham Coca-Cola Bottling Co., 578 So.2d 1299 (Ala.1991). Words in a statute should be given their plain, ordinary, and commonly understood meaning, unless there is a specific statutory definition. Childers v. Morgan County Bd. of Education, 465 So.2d 428 (Ala.Civ.App.1985).
In § 8-22-4(13), the legislature specifically defined "competition" for the purposes of the AMFMA to include any person who competes. Applying that definition of competition to § 8-22-6 and § 8-22-9, it is clear that the legislature included injury to a competitor as part of the definition of competition.
Recent decisions interpreting the AMFMA have found violations of the AMFMA when the injury was to a single competitor. In Star Service, supra, 518 So.2d 126, two of Star Service's competitors testified that their businesses had been injured by Star Service's below-cost pricing. Although Star Service argued that injury to one or two of its competitors was insufficient to establish a violation of the AMFMA, the Court of Civil Appeals held that it was unnecessary to discuss this argument, because, it said, injury to competition necessarily includes injury to competitors.
In Money Back, supra, 569 So.2d 325, the trial court held that the plaintiff's business had been injured when the defendant sold gasoline below cost. Although the specific issue of whether injury to a single plaintiff establishes a violation of the AMFMA was not the question before the Court, we affirmed the trial court's finding that the single plaintiff in that case had been injured by the defendant and, therefore, that the AMFMA had been violated.
Therefore, we hold that injury to a competitor suffices to establish a violation of the AMFMA.
(2) IF INJURY TO COMPETITION RATHER THAN TO COMPETITORS IS A PREREQUISITE TO LIABILITY UNDER THE AMFMA, WHAT IS THE RELEVANCE OF A DEFENDANT'S MARKET SHARE IN DETERMINING THE EXISTENCE OF INJURY TO COMPETITION?
Because injury to a competitor is sufficient to establish a violation of the AMFMA, the defendant's market share is not relevant in determining the existence of injury to competition.
(3) IS LACK OF INTENT TO INJURE COMPETITION AN AFFIRMATIVE DEFENSE, PERMITTING SUMMARY JUDGMENT ON THAT ISSUE UNDER THE AMFMA?
The plaintiffs argue that lack of injurious intent is an affirmative defense under the AMFMA. They further argue that the evidence of lack of an injurious intent must be weighed by the trier of fact and, therefore, that a summary judgment cannot be entered on the basis of this defense. The defendant argues that if all the evidence shows that a defendant possessed no harmful intent in its pricing practices, then a summary judgment is appropriate.
"It may readily be seen that the legislature has in explicit terms prohibited only sales below cost where the effect is to injure competition. We think that to read the intent provision of § 8-22-3 into these provisions so as to place a burden on the State to prove intent would be manifestly contrary to the terms of the Act. However we do think that the various provisions of the Act can be read together in a way that will save their constitutionality. It is quite consonant with the spirit and terms of the Act to construe it as providing that the State proves a prima facie case when it proves a sale below cost and an injurious effect on competition, and yet as allowing the defendant to prove lack of a harmful intent either in avoidance of liability or in mitigation of any penalty, as the trier of fact shall determine.
"....

*423 "Considering the `intent' provision of § 8-22-3, we deem it consistent with these provisions to allow a general defense of lack of injurious intent even if the facts do not specifically fit one of the stated exceptions [§ 8-22-12 and § 8-22-13]for example, an honest mistake in calculations. Such a defense would of course be a matter for the trier of fact and would be given such weight as the trier of fact deems appropriate...."
Galanos v. Mapco, 519 So.2d at 1286-87 (emphasis original).
Certainly, a summary judgment may be permissible based on the affirmative defense of lack of injurious intent. However, as a practical matter, a summary judgment would often be inappropriate, because in many instances a genuine issue of material fact would exist as to the defendant's intent.
(4) CAN A DEFENDANT UNDER THE AMFMA INVOKE THE "MEETING COMPETITION" DEFENSE CONTAINED IN SECTION 8 OF THAT STATUTE WHEN THE DEFENDANT PRICES MOTOR FUEL ONE OR TWO CENTS BELOW THE PRICE SET BY ITS COMPETITORS?
We note that this situation would arise when a defendant has lowered its price below cost and a plaintiff has matched that price under the "meeting competition" defense. The defendant argues that once the plaintiff has met its below-cost price, it too should be able to invoke the "meeting competition" defense and again lower its price below the plaintiff's price.
The plaintiffs argue that under the AMFMA, a defendant cannot invoke the "meeting competition" defense when the defendant prices motor fuel one or two cents below the price set by a competitor. According to the plaintiffs, the meeting competition defense gives a marketer the right to lower its price below cost in a good faith attempt to meet the competitor's equally low price. The meeting competition defense, the plaintiffs argue, is not available to a defendant who undercuts the below-cost pricing of its competitors by any amount.
The defendant argues that it is "meeting competition" when it lowers its below-cost price by one or two cents because as an independent or non-brand name gasoline company, it must sell its gasoline at a lower price in order to be competitive with the major brand gasoline companies, as major brand gasolines have greater brand acceptability and stronger customer preference. The defendant points out that the major brand gasoline companies have higher built-in costs than do independents because of the high cost of marketing and brand name gasoline credit cards. The defendant contends that the role of the independent or non-brand name gasoline company has been to offer gasoline that is lower in price relative to what the sellers of major brand names charge, because of the higher costs built into the major brand name gasoline (i.e., meeting competition, according to the defendant, actually means beating competition).
Section 8-22-8(b) provides as follows:
"It is not a violation of this chapter if any price is established in good faith to meet an equally low price of a competitor in the same market area on the same level of distribution selling the same or a similar product of like grade and quality or is exempt under § 8-22-13."
If the language of a statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect. Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa County, 589 So.2d 687 (Ala.1991).
We do not agree with the defendant's interpretation that meeting competition means beating competition. Section 8-22-8 is clear and unambiguous. The statute cannot be read so as to allow one defendant-competitor to undercut another plaintiff-competitor's prices and then contend that by doing so it is meeting competition. Section 8-22-8 should not be used offensively to ensure that a defendant's price of gasoline will always be below its competition. Therefore, the meeting competition *424 defense is not available to a defendant that knowingly sets its prices below those of its competitor.
QUESTIONS ANSWERED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
MADDOX, J., dissents.
MADDOX, Justice (dissenting).
I would answer the certified questions as follows:
"I. Does the AMFMA require injury to competition as a prerequisite to liability under that act, or does injury to competitors suffice to establish such liability?"
Sections 6 and 9 of the AMFMA make it clear that the sale of motor fuel below cost is unlawful only "where the effect is to injure competition." This Court, in State v. Mapco Petroleum, Inc., 519 So.2d 1275 (Ala.1987), clearly stated that "an injurious effect upon competition," as distinguished from mere intent to injure individual competitors, is an essential element of an AMFMA violation. 519 So.2d at 1286. If a mere showing of "lost profits" resulting from "competitive price-cutting" were sufficient to establish violation, there would have been no reason for the legislature to require proof of "an injurious effect upon competition." Critical to this Court's decision in State v. Mapco was that the AMFMA restricted only those sales in which the effect of selling below cost was to injure competition and in which it did not impermissibly penalize ordinary injury to competitors.
Much of the phraseology found in the AMFMA obviously was borrowed from federal antitrust laws. The AMFMA is aimed at preventing (a) predatory below-cost pricing at retail, and (b) discriminatory pricing at wholesale. The same type of illegal conduct is the subject of the Sherman Act and the Robinson-Patman Act, respectively. Federal case law addressing predatory pricing and discriminatory pricing at wholesale make it clear that there is a fundamental difference between an "injurious effect upon competition" and mere injury to a competitor. An "injurious effect upon competition" does not refer to actions that merely injure individual competitors, but rather to actions that harm the competitive process. See Brown Shoe Co. v. United States, 370 U.S. 294, 319-20, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962).
"II. If injury to competition rather than to competitors is a prerequisite to liability under the AMFMA, what is the relevance of a defendant's market share in determining the existence of injury to competition?"
As I have stated above, an "injurious effect upon competition" requires a showing of injury to the competitive process itself. In regard to below-cost sales of gasoline, evidence of mere "lost profits," without more, is insufficient to make such a showing. Theoretical "lost profits" can be shown by any competitor when any other competitor reduces its price, whether that price is above or below cost. Where there is no credible threat that an alleged "predator's" pricing practice will allow it to "dominate" the market or to destroy a segment thereof, there is no showing of an injurious effect upon competition, in my opinion. A variety of factors must be assessed in this regard, including the relevant market share of the defendant, the number of other competitors in the relevant market, the degree of competitiveness in the relevant market, and a showing as to whether the pricing activity of the defendant "substantially lessened the ability" of other competitors in business.
"III. Is lack of intent to injury competition an affirmative defense, permitting summary judgment on that issue under the AMFMA?"
The plaintiffs, in their brief, concede that "lack of harmful intent" is an affirmative defense to an AMFMA claim. I agree with Mapco that where all of the evidence shows that a defendant possesses no "harmful intent" in its pricing practices, i.e., that its intent was merely to establish a competitive price, and that it had no intent to injure either individual competitors or competition in general, a summary judgment is appropriate, just as if any other "affirmative *425 defense" at law had been shown without dispute to exist.
"IV. Can a defendant under the AMFMA invoke the `meeting competition' defense contained in Section 8 of that statute when the defendant prices motor fuel one or two cents below the price set by its competitors?"
If the price differential is based upon facts that would lead a reasonable and prudent person to believe that a seller's maintenance of the differential is necessary in order to maintain a competitive balance between that seller's product and competitors' products that have certain inherent competitive advantages or disadvantages (i.e., greater brand acceptability, a greater customer preference, or cost-of-product differential), the maintenance of such a retail differential comports with the concept of "meeting competition." "The test in such a case is not necessarily a difference in the quality of the products, but the fact that the public is willing to buy one product at a higher price in a normal market." Anheuser-Busch, Inc. v. FTC, 54 F.T.C. 277 (1957), cited with approval, Falls City Industries, Inc. v. Vanco Beverage, Inc., 460 U.S. 428, 450, n. 16, 103 S.Ct. 1282, 1296 n. 16, 75 L.Ed.2d 174 (1983). In the context of the retail gasoline business, it seems clear to me that sellers of "independent" or "non-major" brand regular unleaded gasoline, such as Mapco, Western, Red Acte, might have to sell at a lower price in order to remain competitive with vendors of "major" brand regular unleaded gasolines, such as Exxon, Shell, Amoco, Gulf, and Mobil, which have the benefit of greater brand acceptability and stronger customer preference and the concomitant disadvantage of higher cost of supplies (caused by their admittedly successful marketing philosophy of creating the foregoing advantages through national advertising, credit cards, facilities at the most favorable locations, multi-layered distribution systems, car washes, etc.). Thus, where the "normal" differential represents a price spread that can obtain between the two types of gasoline "without major competitive repercussion," FTC v. Sun Oil Co., 371 U.S. 505, 83 S.Ct. 358, 9 L.Ed.2d 466 (1963), I believe that the AMFMA permits the seller of the lesser accepted brand to rely upon the "meeting competition" defense, if necessary.
I must disagree with the answers supplied by the Court.