HOLMES, Retired Appellate Judge.
Hispan Corporation appeals from the judgment of the Circuit Court of Morgan County that upheld the denial of a foreign franchise tax deduction by the Department of Revenue of the State of Alabama against Hispan Corporation for the tax years 1990 and 1991, and assessed Hispan with an additional franchise tax for the calendar years 1988 through 1991.
The following facts are largely undisputed: In April 1988 David Peirson, a representative for Hispan, met with various individuals from the State of Alabama, including representatives from the Governor’s office, the Alabama Development Office, and the State Department of Revenue (Department), regarding the possibility of choosing Alabama as a site for industrial expansion.
The Alabama Development Office provided Hispan with an “Industrial Incentives Package.” One of the incentives available to His-pan was a franchise tax exclusion provided by Ala.Code 1975, § 40-14^1(d)(2)d.
“The purpose of § 40 — 14—41(d)(2)d [when it existed] was to increase jobs in Alabama counties in which the unemployment rate was above the national average. This statute was created to induce foreign corporations to invest heavily in certain economically depressed counties of Alabama during 1985-1990.”
International Paper Co. v. Broadhead, 662 So.2d 277, 279-80 (Ala.Civ.App.1995).
In order to receive the franchise tax exclusion, Hispan invested a total of $136 million in Morgan County, Alabama — $66 million in 1990 and $70 million in 1991. According to the Department, Morgan County was a “qualifying county,” and Hispan’s investment was made in “qualifying property.” Hispan subsequently deducted those amounts on its foreign corporation franchise tax returns for those years, pursuant to § 40-14-41(d)(2)d. The Department, however, denied the deductions based on the fact that Hispan did not have the necessary qualification certificate required by § 40-14-41(d)(2)d. The Department further entered an additional assessment of franchise tax against Hispan for the calendar years 1988 through 1991, in the amount of $461,528.02.
Hispan appealed to the Department’s Administrative Law Division. After a hearing the administrative law judge issued a final order on April 30, 1993, upholding the Department’s assessment, as well as the denial of the deductions. The administrative law judge based his decision on the fact that “(1) the State and [Hispan] failed to enter into an agreement for the investment of the money, as required by the statute, and (2) the State failed to issue a qualification certificate to [Hispan], also as required by the statute.”
Thereafter, Hispan appealed to the Circuit Court of Morgan County. Following a hearing on April 29,1996, the trial court affirmed the judgment of the administrative law judge. Hispan filed a post-judgment motion, which the trial court denied.
Hispan appeals.
On appeal Hispan contends that it is entitled to the exclusion provided by § 40-14-41(d)(2)d. for the following reasons: It had a verbal agreement with the State, which is supported by the fact that it invested $136 million in Morgan County; the various State officials, with whom it met, assured Hispan that it qualified for the exemption and that the exemption would be allowed; the State’s act of issuing a qualification certificate is *1235 nothing more than a ministerial act; and the State’s failure to issue the qualification certificate in this ease is, thus, correctable.
At the outset, we would note that the following language set forth in § 40-14-41(d)(2)d., is very specific, as well as unambiguous:
“Before any such amount invested by a taxpayer may be deducted from the amount of its capital employed in this state ..., a qualification certificate must be issued to the taxpayer .... Such qualification certificate shall state that a committee composed of the Governor of the state, the State Finance Director, and the Revenue Commissioner of the state has, prior to or on the date of such qualification certificate, met and determined [certain criteria].... The issuance by the committee of any qualification certificate hereunder shall be conditioned upon the taxpayer having ‘pri- or thereto or contemporaneously therewith entered into such agreement or agreements with the state as the committee herein provided for shall have determined to be appropriate, which such agreements may be signed in the name of said committee for and on behalf of the state by the Governor ....”
(Emphasis added.)
Clearly, the statute is very specific regarding the prerequisites and conditions that a taxpayer must meet in order to obtain a qualification certificate. It is well settled that “[w]ords in a statute should be given their plain, ordinary, and commonly understood meaning.” McGuire Oil Co. v. Mapco, Inc., 612 So.2d 417, 422 (Ala.1992). Further, “[i]f the language of a statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.” McGuire Oil Co., 612 So.2d at 423.
We find the following summary, which the trial court set forth in its final order dated September 12, 1996, to be most conclusive:
“Contrary to [Hispan’s] argument, the Legislature clearly intended that no deduction on a franchise tax return would be allowed unless a qualification certificate had first been issued, and a copy filed with the return for each year in question. The purpose of this certificate was to assure that the taxpayer and the state had made a firm agreement about the amount of the taxpayer’s investment in qualifying property located in a qualifying county and that the committee had made the three (3) determinations expressly outlined in § 40-14-41(d)(2)d. For the protection of ... both the state and taxpayer in the event of future disputes or administration changes, the drafters of this exemption obviously viewed the qualification certificate and agreement as necessary prerequisites to the exemption allowance. Issuance of the certificate contemplated much more than a mere ministerial act.
“Even if state and county officials led [Hispan] to believe that it would be allowed the franchise tax deduction, it was not within the authority of such officials to exempt a foreign corporation from franchise tax except in the manner and to the extent expressly approved by the Legislature. In this case the burden is upon the taxpayer to clearly establish its entitlement to the exemption. Tax exemptions require strict construction against exemption and in favor of the applicable tax. In cases where doubt exists about the scope of a claimed exemption, a presumption exists in favor of the taxing authority.
“It is indeed regrettable that [Hispan] made a very substantial capital investment in Morgan County without first entering into an agreement with the State and obtaining a qualification certificate. The court, however, finds no exceptions to these specific requirements set forth in § 40-14-41(d)(2)d. and has no legal authority to employ a remedy which ignores them. The taxpayer has failed to carry its burden to prove that it is qualified for the exemption from franchise tax during the years 1990 and 1991.”
This court, too, emphasizes its compassion for the harsh effect that has been imposed upon Hispan in the instant case. However, as stated by the trial court, the statute does not provide for any exceptions to the specific requirements set forth by the statute.
*1236 We would also note that Hispan raises an additional issue on appeal regarding the amount of tax assessed by the Department. As stated previously, the administrative law judge upheld the Department’s assessment for additional franchise tax in the amount of $491,528.02. In turn, the trial court upheld the judgment of the administrative law judge. Hispan contends that the amount which the Department assessed and that the trial court upheld was arbitrary and unsupported by the evidence. The record reveals, however, that Hispan never raised this issue before the administrative law judge or the trial court. It is well settled that this court will not address matters raised on appeal, which were not presented to the circuit court. ITEC, Inc. v. Automated Precision, Inc., 623 So.2d 1139 (Ala.1993).
Based on the foregoing, we conclude that the trial court did not err in upholding the judgment of the administrative law judge.
Consequently, the judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge Richard L. Holmes while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
ROBERTSON, P. J., and YATES and MONROE, JJ., concur.
CRAWLEY and THOMPSON, JJ., concur specially.