We granted the petition of the plaintiffs Young Oil Company and others (collectively "Young Oil"), pursuant to Rule 5, Ala. R.App. P., for permission to appeal a partial summary judgment entered in favor of the defendant Racetrac Petroleum, Inc. We affirm.
The facts and the dispositive issue involved in this dispute were thoroughly discussed by the trial court in its order now being challenged by the appellants. Because we agree with the trial court's disposition and with its rationale in all material respects, we quote here all material portions of that order:
 "THIS CAUSE came before the court upon the motion of Plaintiffs Young Oil Company, National Refining Company, Holmes Oil Company, Inc., Chatham Oil Company, Inc., John T. Davis Oil Company, Inc., and Cougar Oil Company for partial summary judgment and upon the cross-motion of Defendant Racetrac Petroleum, Inc., for partial summary judgment against Plaintiffs pursuant to Rule 56, Ala. R. Civ. P.
"I. THE ALABAMA MOTOR FUEL MARKETING ACT.
"Alabama is one of many states which [have enacted 'below-cost' statutes] governing the sale of motor fuel. That statute is known as the Alabama Motor Fuel Marketing Act (the 'AMFMA' or the 'Act'). The stated purpose and intent of the AMFMA is to curb predatory pricing for the protection of consumers and promoting fair competition in motor fuel marketing. Ala. Code [1975], § 8-22-3 (1993 Repl.Vol.). See also BP Exploration Oil, Inc. v. Hopkins, 678 So.2d 1052, 1053 (Ala. 1996).
"More importantly to the facts of this case, although the AMFMA contains a proscription against below-cost sales, § 8-22-8(b) of the Act expressly allows below cost sales made in good faith to meet the equally low price of a competitor in the same relevant market:
 "'(b) It is not a violation of this chapter if any price is established in good faith to meet an equally low price of a competitor in the same market area on the same level of distribution selling the same or a similar product of like grade and quality or is exempt under Section 8-22-13.'
Ala. Code [1975], § 8-22-8(b) (1993 Repl. Vol.).
"II. THE ISSUE BEFORE THE COURT.
"A. The Parties Are in Substantial Agreement Regarding the Construction of the AMFMA.
"The parties are in substantial agreement on what would and what would not create liability under the AMFMA. First, both parties agree that under the AMFMA, a retailer of motor fuel can legally lower its retail price below the retail price of all its competitors as long as it does not lower its price below its actual cost.
"Second, [the] parties agree that the Act expressly allows below-cost sales made in good faith to meet the equally low price of a competitor in the same relevant geographic market. See Ala. Code § 8-22-8(b) (1993 Repl.Vol.). Thus, a retailer can sell below its cost without violating the Act as long as it is selling at or above the price of a competitor.
"Third, the parties also agree that it is a violation of the Act if a retailer knowingly establishes a price below cost and below the price of all of its competitors, i.e., without meeting competition. The parties further agree that, under this scenario, even if a competitor subsequently lowers its price to meet the illegally established price, the retailer that illegally established the price cannot then justify its illegally established price by asserting the "meeting competition defense.' For example, Retailer A *Page 382 
violates the Act if it knowingly establishes a retail price of 95¢ for regular unleaded gasoline that is both below its cost and below the retail price of all competitors. In addition, even if a competitor, such as Retailer B, subsequently lowers its price to match Retailer A's price, Retailer A cannot, under those circumstances, assert that it was meeting Retailer B's price under the 'meeting -competition defense' because Retailer A established the 95¢ price in bad faith in violation of the Act.
"B. The Issue — The 'Rising Wholesale Theory.'
"In the instant case, the disagreement concerns the requirements of the Act when the wholesale price of motor fuel is on the rise. In particular, the parties request that the court declare whether a violation of the AMFMA occurs where a retailer (i.e., Racetrac) sells motor fuel at a retail price initially above its statutory cost[1] and equal to one or more of its competitors, but then due to an increase in the wholesale cost of fuel, the retailer (Racetrac) and one or more of its competitors while matching one another's retail price, are placed in a below-cost selling situation. In other words, under these circumstances, may a retailer such as Racetrac assert the 'meeting-competition' defense under Ala. Code [1975], § 8-22-8(b) (1993 Repl. Vol.)?
"The parties have identified this scenario as the 'Rising Wholesale Scenario' and Plaintiffs' argument as the 'Rising Wholesale Theory' and agree that Racetrac, on one or more occasions, has sold motor fuel in the manner set forth below. In particular, the parties have presented the court with the following example illustrating this issue:
 "Assume that there exist three retailers, A, B, and C, who are each selling regular unleaded gasoline at $1.00 per gallon. Retailer A's statutory cost is 95¢. Retailer B's statutory cost is 97¢. Retailer C's statutory cost is 98¢. "Next, assume that Retailer A lowers its retail price to 96¢ (1¢ above its statutory cost). Retailers B and C lower their retail price to 96¢, meeting A's new retail price. Both B and C are below their statutory cost but are in compliance with the AMFMA because each has met Retailer A's lower retail price.
 "Several weeks later, market conditions change and the wholesale price of regular unleaded gasoline begins to rise, increasing A's statutory cost from 95¢ per gallon to 97¢. Consequently, each retailer is now selling below its statutory cost (A is 1¢ below its statutory cost; B is 3¢ below its statutory cost; and C is 4¢ below its statutory cost.)
 "Although each retailer is now selling below its statutory cost, none wants to initiate an increase in its retail price.
"The issue is whether the three retailers in this scenario may assert the "meeting-competition defense' to avoid liability under the AMFMA. Racetrac contends the defense is available to all of the retailers who are matching each other's price. Plaintiffs contend the defense is available to Retailers B and C, but not to Retailer A. Plaintiffs contend the Act requires that under the 'Rising Wholesale Theory,' Retailer A must be the first of the three retailers to raise its retail price back to "at or above' its statutory cost since it was the first retailer (of the three) to lower its retail price, i.e., Plaintiffs contend a 'First Down/First Up Rule' should be imposed. Plaintiffs further assert that Retailer A's failure to be the first to raise its retail price to 'at or above' its statutory cost would constitute a violation of the Act. Plaintiffs ask this court to find that under such market conditions, Retailer A cannot assert the 'meeting-competition defense' with respect to [the prices of Retailers B and C] but that, Retailers B and C can assert the "meeting-competition *Page 383 
defense' with respect to Retailer A's retail price.
"By contrast, Racetrac contends that under the 'Rising Wholesale Scenario' the 'meeting-competition defense' is available to all of the retailers who are selling below statutory cost but who are matching the retail prices of one or more of their competitors. Racetrac contends that Plaintiffs' proposed construction of the Act is novel and violates the plain, unambiguous provisions of the Act; that Plaintiffs construction is impracticable to implement; that it would ignore market realities and would require cost-prohibitive and unduly burdensome record keeping neither required nor contemplated by the Act; and that Plaintiff's construction would, in fact, harm competition. Racetrac contends Plaintiffs simply seek to rewrite the Act to proscribe conduct not otherwise discernible from the language of the Act for Plaintiff's own anticompetitive purposes. . . .
"The court conducted oral arguments on June 11, 1998, on the issues raised in both motions, and these issues were briefed and argued extensively by counsel for the parties. Having considered the evidence of record, the relevant provisions of Alabama statutes, the arguments of counsel, and being advised in the premises, for the reasons set forth herein the court denies Plaintiffs' motion for partial summary judgment and, in turn, grants Defendant Racetrac's motion for partial summary judgment in its entirety.
"III. CONSTRUCTION OF A PENAL STATUTE
"From the outset it is noted that the AMFMA must be strictly construed in Racetrac's favor and against Plaintiffs because penalties that may be assessed under the AMFMA render it penal in nature.[2] In particular, § 8-22-16 imposes a forfeiture or penalty for transgressing its provisions. See State ex rel. Galanos v. Mapco Petroleum, Inc.,519 So.2d 1275, 1283 n. 3 (Ala. 1987) (noting that "the substantial civil penalty authorized by the [AMFMA] would in all likelihood require a mens rea element . . .'). See also Ports Petroleum Co., Inc. v. Tucker, [323 Ark. 680, 684,] 916 S.W.2d 749, 753 (1996) (holding that the civil-fine provision in Arkansas's gasoline below-cost pricing statute made it a penal statute and, thus, subject to strict construction).
"The Supreme Court of Alabama has also consistently stated that '[p]enal statutes are to reach no further in meaning than their words.' Clements v. State, 370 So.2d 723, 725 (Ala. 1979), overruled on other grounds, Beck v. State, 396 So.2d 645 (Ala. 1980) (citations omitted). See also State ex rel. Graddick v. Jebsen S. (U.K) Ltd., 377 So.2d 940,942 (Ala. 1979) (holding that "penal statutes are to be strictly construed in favor of the persons sought to be subjected to their operation'). . . . Furthermore, "[n]o person is to be made subject to penal statutes by implication and all doubts concerning their interpretation are to predominate in favor of the accused.' Clements, 370 So.2d at 725.
"This rule of narrow construction is rooted in the concern of due process, and the belief that fair warning should be accorded as to what conduct is illegal and punishable by deprivation of liberty or property. . . . In other words, one is not to be subjected to a penalty unless the words of the statute plainly impose it. . . .
"In addition, the court's ability to construe the AMFMA is limited. Under Alabama law, in a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue, judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished. . . .
". . . Accordingly, under Alabama law, when the words of a statute are plain and unambiguous on their face, there is *Page 384 
no room for judicial construction, Steele v. Steele, 623 So.2d 1140,1142 (Ala. 1993); IMED Corp. v. Systems Engineering Associates Corp.,602 So.2d 344, 346 (Ala. 1992), and the court must enforce the statute as written by giving the words of the statute their ordinary, plain meaning, thus giving the apparent intent of the Legislature.
"IV. INTERPRETATION OF THE STATUTE.
"Applying these well-established principles of statutory construction to the parties' claims, the court first turns to the language of the statute. One of the central issues [in] this dispute is what actions constitute the "establishment' of a price for purposes of the 'meeting-competition defense' under the AMFMA. As set forth above, §8-22-8(b) provides, in relevant part, that '[i]t is not a violation of this chapter if any price is established in good faith to meet an equally low price of a competitor. Ala. Code [1975], § 8-22-8(b) (1993 Repl. Vol.) (emphasis added).
"The word 'establish' was not used by the legislature as a word of art with an assigned statutory definition in the sections of the Act. It must therefore be construed as having the general definition assigned by usage. A resort to any dictionary will disclose that within the broad confines of the word "establish' there exist many meanings. As stated by one court, '[a]mong the many definitions of the word 'establish' is one which defines the terms as 'confirm' or 'validate.' See, e.g., Gnadt v. Durr, 208 Kan. 783, 788, 494 P.2d 1219, 1223 (1972).
"In the instant case, Plaintiffs . . . argue that once Racetrac lowers its price and establishes a new price, any decision made on a subsequent day to remain at that same price does not constitute the "establishment' of a price under the Act for purposes of the "meeting-competition defense.' So, for example, in the 'Rising-Wholesale Theory' example above, after Retailer A lowered its price to 96¢, Plaintiffs argue Retailer A cannot thereafter assert that it is "establishing' a price by choosing to match Retailers B and C by remaining at that same 96¢ price. The court finds plaintiffs' argument is . . . wholly inconsistent with the language of the Act and the way [retailers] establish prices.
"The undisputed evidence shows that retailers make pricing determinations (to raise, lower, or stay at the same price) on a regular basis. . . . The evidence did not indicate that Racetrac simply lowers its price, remains at that price, and never takes another survey of the market. . . . Every time Racetrac surveys its competitors' prices, it is considering the market as it exists for that moment in time, for that particular Racetrac or Raceway store, for that grade of gasoline surveyed. In other words, as Racetrac considers a new set of market factors each time a survey is taken, it does, in fact, 'establish' a new price with each survey whether that new price is increased, decreased or "confirmed' at the same level.
"Applying these [considerations] to the 'Rising-Wholesale Theory" example, after Retailer A lowered its price to 96¢, if it takes surveys of the market and is matching its competitors' prices . . . then it is, in fact, considering new market factors with each survey taken, and it is "establishing' a new price by choosing to match Retailers B and C at its 96¢ price.
"Moreover, although Plaintiffs maintain that a retailer must affirmatively lower its price to actually "meet' a competitor's price under the Act, their argument is internally inconsistent. The term "meet' means to match, whether a retailer has to increase its price, decrease its price or maintain its price to match a competitor's price. In other words, a downward movement in price is not a prerequisite for asserting the "meeting-competition defense'; it may *Page 385 
require only that the retailer maintain its current price equal to that of a competitor.
"Finally, other provisions of the Act itself support Racetrac's [proposed] daily-market-view approach because it specifically looks to the facts that exist on a single day, for a single store, for a single grade of gasoline. See § 8-22-16(a) (1992 Repl.Vol.) (which provides, in part, that '[e]ach day that a violation of this chapter occurs shall be considered a separate violation').
"The court also [notes] that, under the plain meaning of the statute, the 'Rising-Wholesale Market Scenario' is not addressed under the AMFMA or, more importantly, under the "meeting-competition defense.' Indeed, there would have to be a significant amendment to or rewriting of the AMFMA to effectuate Plaintiff's proposed interpretation of the Act and, in particular, the so-called 'First Down/First Up Rule.' Additionally, the construction, in practical effect, would require a presumption that all of the retailer's competitor(s) then at the same retail price, are selling below their statutory cost since no retailer can truly know its competitor's cost of doing business.
"In fact, in their briefs and during the hearing on this matter, defendant Racetrac presented several examples of why implementation of the 'First Down/First Up Rule' would be impracticable and why, in fact, it could actually harm competition and artificially increase the price of gasoline to the consumer, two outcomes clearly inconsistent with the intent of the Act.
"In addition, Plaintiffs have presented no decisions, state or federal, construing the AMFMA or any similar 'below-cost' statute in the manner so urged, and they have not otherwise established to the court's satisfaction that their, proposed construction of the Act has been fairly disclosed to be within its scope. . . There is also no evidence that Plaintiffs' proposed construction of the Act is based on legislative intent. . . . Based on these findings, the court would be hard pressed to conclude that any provision of the Act can be said to fairly disclose that a retailer, who in good faith legally lowers his price and remains above his cost, violates the Act if, when wholesale prices begin to rise and overtake his price, he fails to initiate an increase of his price to "at or above' his cost while his competitors remain at the lower price. His competitors may, in that circumstance, raise their prices, thus forcing the retailer who led the market down to raise his price at least up to where it would again match ("meet') a competitor's price.
"Even if one were to assume any efficacy of Plaintiffs' alternative construction, i.e., that Retailer A would have to determine or presume (even in a market with high margins) that its competitors were all selling below cost and that Retailer A must, therefore, initiate an increase in its price, the Act provides no guidance concerning the length of time Retailer A would have to maintain its newly increased price where the competitors fail to increase their prices. In other words, how long would Retailer A have to remain at the higher retail price before it could decrease its price to meet the competitor and assert a 'meeting-competition defense'? Although during oral argument Plaintiffs propose[d] a "reasonable-time' standard, the Act is silent on this issue, and the court is reluctant to rewrite the Act to impose such a standard. That is the purview of the Legislature and not that of the court. Were the Legislature so inclined to draft a statute similar to the construction urged by Plaintiffs, it would certainly need to evaluate a time after which a retailer would again [be able to] meet competition by setting its price equal to its competitors that had remained at the low price. *Page 386 
"Moreover, it is also well established that if a statute is subject to two interpretations, one rendering it constitutional and the other rendering it] unconstitutional, the Legislature will be presumed to have intended a meaning consistent with the constitutionality of its enactment. Eagerton v. Exchange Oil Gas Corp., 404 So.2d 1, 8 (Ala. 1981), aff'd in part, rev'd in part on other grounds, [Exxon Corp. v. Eagerton,] 462 U.S. 176, 103 S.Ct. 2296, 76 L.Ed.2d 497 (1983); Tyson v. Johns-Manville Sales Corp., 399 So.2d 263, 271 (Ala. 1981); Ex parte McCurley, 390 So.2d 25, 29 (Ala. 1980). In this case, there exists a valid constitutional construction of the AMFMA as set forth by the Supreme Court of Alabama in McGuire Oil Co. v. Mapco, Inc.,612 So.2d 417 (Ala. 1992). Racetrac's interpretation of the Act and, in particular, the 'meeting-competition defense,' is consistent with the construction in McGuire Oil. . . .
"By contrast, the construction of the Act urged by Plaintiffs could undermine the general intent defense available under the Act by potentially penalizing innocent acts by requiring a presumption under the 'Rising Wholesale Price Scenario' that all of the competitors of the accused retailer (i.e., Retailer A in our scenario) are selling below their statutory cost. Second, it appears to the court that a commonsense interpretation of the Act mandates that a retailer's intent be measured at the time the retailer acts, i.e., when it actually establishes a price, and not retrospectively as urged by Plaintiffs. In other words, did Retailer A decrease its price in good faith to a price either above its statutory cost or, if below its statutory cost, to match the lower price of a competitor?
"In addition, the AMFMA does not penalize petroleum marketers such as Racetrac for an increase in market share (and concomitantly, a loss of market share by its competitors) resulting from a more efficient operation. Such losses of market share are simply an ordinary consequence of accepted marketing principles and practices. As stated by the [Court of Civil Appeals]:
 "'[I]t is part of the normal competitive process for competitors to be 'injured' when they lose customers to a marketer who offers the public a lower price. Such "injury' is not what the [A]MFMA addresses. Rather, it is injury to competition . . . due to certain unlawful sales tactics, such as selling motor fuel below cost. . . .'
Star Service Petroleum Co. v. State ex rel. Galanos, 518 So.2d 126,130 (Ala.Civ.App. 1986). Plaintiffs agree that Racetrac generally has lower costs. To the extent that Racetrac is more efficient and can lower the cost of gas, these lower costs can be translated into lower pump prices to the benefit of the consumer without violating the AMFMA.
"What the AMFMA and similar statutes do proscribe is "predatory pricing.' In fact, the Act specifically provides that "[s]ubsidized pricing is inherently predatory' Ala. Code [1975], § 8-22-2(4) (1993 Repl.Vol.). . . .
". . . .
"Price reductions that constitute a legitimate, competitive response to market conditions, as in the instant case, are not inherently predatory. . . . The court [concludes] that Plaintiffs' proposed construction must be rejected because it allows inferences of predatory conduct to be too easily drawn thereby deterring legitimate, pro-competitive behavior. A legal price reduction by Retailer A (or by Racetrac) to a price above statutory cost to gain market share cannot be transformed into an act of prohibited predatory pricing by the occurrence of an event beyond Racetrac's control such as a subsequent increase in the wholesale price of gasoline at a time that Racetrac and one or more of its competitors are matching each other's prices. *Page 387 
Since they are "meeting competition, ' no violation of the Act has ocurred.
". . . The Legislature perfectly capable of implementing . . . policy. If, in this case, the Legislature had intended for the AMFMA to encompass the "Rising Wholesale Price Scenario' and the 'First Down/First Up Rule,' then it [c]ould have so provided. It did not so do, and this court cannot by judicial flat amend the Act.
"Accordingly, the court denies Plaintiffs' motion for partial summary judgment and, in turn, grants Defendant Racetrac's motion for partial summary judgment . . . and declares as follows:
 "A violation of the Act does not occur where Racetrac sells motor fuel at a retail price initially above its statutory cost and equal to one or more of its competitors, but then due to an increase in the wholesale cost of fuel, Racetrac and one or more of its competitors while matching one another's retail price are placed in a below-cost selling situation. Under these circumstances, a retailer can assert the 'meeting — competition' defense in Ala. Code § 8-22-8(b) (1993 Repl.Vol.).
 "[1] Statutory cost is comprised of the wholesale cost of the fuel, taxes, freight and general overhead.
"[2] Section 8-22-16 provides, in part, as follows:
 "'(a) Any person who violates this chapter shall be subject to a civil penalty not to exceed $10,000 per violation for each offense. Any such person shall also be liable for attorney fees and shall be subject to injunctive relief. Each day that a violation of this chapter occurs shall be considered as a separate violation.'"
(Some footnotes omitted.)
We agree with the trial court's order as quoted, and we adopt it as part of the opinion of this Court. Under that approach, of course, Young Oil must rely on "self help," namely, its own decision to raise its price above the floor set by Racetrac in order to move Racetrac's price upward (hereinafter "the self-help" approach). To the trial court's comments, we add some of our own.
First, the issue presented in this case does not fall within the plain language of the statute. In other words, to adopt Young Oil's proposed First Down/First Up Rule would require us to extend the language of the statute beyond its plain meaning.
Second, we recognize that the self-help approach is not entirely free of difficulty. Neither, however, is the approach urged by Young Oil. Indeed, the First Down/First Up Rule would involve impracticabilities in addition to those expressly noted by the trial court. One question that would certainly arise, for example, is which retail competitor, B or C, in the trial court's example, would be required by the First Down/First Up Rule to raise its price first, after Retailer A, the price leader, raises its price above cost? Assume, in other words, the following scenario: Retailer A posts its price at $.96 per gallon, when the statutory cost is 94¢ per gallon. The next day, Retailer B and Retailer C reduce their prices to their below-cost price of 96¢ per gallon to "meet" A's price. Next week, because of an increase in the wholesale price, Retailer A's statutory cost rises to $.98 per gallon. The following day, Retailer A raises its price to $.99 per gallon. However, that increase leaves the prices charged by Retailer B and Retailer C still at $.96 per gallon.
Young Oil concedes that such a situation would "eliminate the defensive posture of competitors B and C." Appellants' Reply Brief at 21. Moreover, as we understand Young Oil's argument, both Retailer B and Retailer C could use the "meeting-competition" defense vis-aacute;-vis each other. But neither Retailer B nor Retailer C wants to be the first to raise its price; hence, this litigation. Logically, the First Down/First Up Rule would require both *Page 388 
Retailer B and Retatier C to determine which competitor had been the first to arrive at the 96per-gallon rate. With little imagination, it can be seen that this scenario, and, no doubt, others of which we are as yet unaware, would involve an inordinate amount of record keeping.
Finally, the self-help approach is not inconsistent with our caselaw construing the AMFMA, and § 8-22-8(b) in particular. It is not, for example, inconsistent with McGuire Oil Co. v. Mapco, Inc., 612 So.2d 417
(Ala. 1992). That case involved the following question, certified to this Court from the United States Court of Appeals for the Eleventh Circuit: "Can a defendant under the AMFMA invoke the "meeting competition' defense contained in [§ 8-22-8(b)] when the defendant prices motor fuel one or two cents below the price set by its competitors?" 612 So.2d at 423. More specifically, the defendant in that case argued that the ""meeting-competition' defense" allowed it to reduce its price, and then, when a competitor lowered its prices to that level, further "lower its price below the [competitor's] price." Id. (emphasis added). This Court rejected that contention, noting that "meeting competition, " according to the defendant, actually meant "beating competition." Id. We stated that the statute "is clear and unambiguous," and that it "cannot be read so as to allow one defendant-competitor to undercut another plaintiff-competitor's prices and then contend that by doing so it is meeting competition." Id. We explained that § 8-22-8(b) "should not be used offensively to ensure that a defendant's price of gasoline will always be below its competition." Id. (emphasis added).
That is not the argument made by Racetrac in this case. Racetrac argues only that it should not always be the first retailer to raise its price from a level it shares with competitors. For these reasons, the judgment of the trial court is affirmed.
AFFIRMED.
HOOPER, CJ., and HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
MADDOX, J., concurs in the result.