**HOME OIL COMPANY, INC., Plaintiff,**

v.

**SAM'S EAST, INC., Defendant.**

**No. CIV.A.01–F–1251–S.**

United States District Court, M.D. Alabama, Southern Division.

Feb. 26, 2003.

H. Dean Mooty, Jr., Mooty & Associates, PC, Montgomery, AL, for Home Oil Company, Inc., plaintiff.

Derek Peterson, Gunter & Peterson, Abbeville, AL, Steven A. Benefield, Clark A. Cooper, Greer B. Mallette, A. Melissa Boles, Christian & Small, LLP, Birmingham, AL, for Sam's East, Inc., defendant.

## MEMORANDUM OPINION AND ORDER

FULLER, District Judge.

Home Oil Company, Inc. ("Home Oil") filed this action against the defendant, Sam's East, Inc. ("Sam's") on October 25, 2001, claiming that it had violated and continued to violate the Alabama Motor Fuel Marketing Act ("AMFMA" or "the Act"), Ala.Code §§ 8–22–1 to –18 (1975) by selling gasoline to consumers below cost.[1] (Compl., Doc. # 1.) As a result of the claimed violations, Home Oil seeks injunctive relief, as well as attorney's fees and civil penalties. Sam's has filed a counterclaim for declaratory relief claiming that it is permitted to meet the rebated price of gasoline sold by a competitor. ( Am. Answer of Def. Sam's East, Inc. and Countercl. for Declaratory Relief, Doc. # 43 at 7–10).

This cause is currently before the court on Sam's Motion for Summary Judgment (Doc. # 67), filed September 30, 2002. The court will also rule on Sam's Motion to Strike (Doc. # 94), filed November 20, 2002.

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332:

## FACTS AND PROCEDURAL HISTORY

Home Oil is an Alabama corporation that owns and operates a Chevron-branded gas station at 2977 Montgomery Highway, Dothan, Alabama, which it calls Hobo Pantry No. 17 ("Hobo 17"). (Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J., Doc. # 83 at 3.) Hobo 17, which offers three grades of gasoline for sale and operates a convenience store in conjunction with its station, has operated 24–hours–a–day since it opened in April of 1991. (Id.)

Approximately 600 yards from Hobo 17, Sam's operates a gas station that opened for business on December 6, 2000. (Id.) Sam's station offers only two grades of gasoline and is not a 24–hour facility. (Id.) It is located on the premises of a Sam's Wholesale Club, which sells food and other goods to Sam's Club members. To become a Sam's Club member, one is obliged to pay a membership fee ranging between $30–$200. (Doc. # 84 Ex. 2 at 26.) On the dates in question in this action, Sam's offered to sell gasoline to customers who presented a Sam's membership card at a

---

1. Alabama is one of the many states that have enacted statutes governing the sale of motor fuel. The stated purpose of the AMFMA is to "encourage fair and honest competition, and to safeguard the public against the creation of monopolies or unfair methods of competition, in transactions involving the sale of, or offer to sell, or inducement to sell motor fuel in the wholesale and retail trades in this state." § 8–22–3. One way it fulfills this purpose by prohibiting the sale of motor fuel below cost. See § 8–22–6.

price five-cents-per-gallon lower than the price offered to those customers who did not present a Sam's membership card. (Doc. # 83 at 4.)

Home Oil claims that Sam's has violated the AMFMA on various occasions in October, 2001 by offering to sell gasoline to both members and nonmembers at prices below cost as defined in the Act. (Doc. # 83 at 4.) As a result of these alleged illegal pricing practices, Home Oil claims it has suffered a decrease in gasoline sales at Hobo 17. (*Id.*)

After a hearing on these allegations, the magistrate judge assigned to this case recommended that Sam's be preliminarily enjoined from employing a pricing strategy that violated section 8–22–6. (Doc. # 23.) The court adopted the magistrate judge's recommendation and entered a preliminary injunction against Sam's on May 3, 2002 (Doc. # 36).

## SUMMARY JUDGMENT STANDARD

Summary judgment can be entered on a claim only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant to make "a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990). To satisfy this burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Mat-*

*sushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 919 (11th Cir.1993) ("Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant."). However, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir.1996).

## DISCUSSION

### I. Motion to Strike Hearsay

█. Because it will become important to the analysis of Sam's summary judgment motion, the court will first address Sam's Motion to Strike (Doc. # 94), filed November 20, 2002. In its motion, Sam's asserts that certain testimony given by Tim Shirley (Home Oil's President), relating to "statements of customers purporting to ask why they should buy gas from Home Oil when they could go to Sam's and buy it cheaper," (Doc. # 94 at 1) and relied upon by Home Oil in its response in opposition to Sam's summary judgment motion should be stricken as hearsay.

Sam's claims that various hearsay statements relied upon in Home Oil's Response in Opposition to Sam's Motion for Summary Judgment (Doc. # 83 at 8–9) and contained in Home Oil's supporting evidentiary documentation (Doc. # 84 Ex. 1 at 99–100; Ex. 9 at 38–39, 48–53, 57–59)

should be stricken, without specifying exactly which. (Doc. # 94 at 1.) The disputed statements, as the court understands them, follow:

Q To what do you attribute the volume loss we have identified earlier in your 13 month sales analysis?

A Sams [sic].

Q Why not another competitor?

A Gasoline marketing is complicated. But to answer, my customers have told me that. They ask me continuously why they should pay me for gas than they do Sams [sic].

(Excerpts from Tr. of Hr'g in Pl.'s Mot. for Prelim. Inj., Doc. # 84 Ex. 1 at 99–100.) Sam's also claims that portions of Mr. Shirley's deposition testimony relied upon by Home Oil are inadmissible hearsay:

A[M]y personnel in the stores having to answer to the customers on a daily basis why we are consistently priced seven to eight to ten cents a gallon above ....

... and they are saying, you know, how can they sit there and sell 10—at that time, 15 cents under you? You know, it's very difficult to do when you sit there and say, well, they are selling gasoline below cost. Well, why don't you sell it below cost?

(Doc. # 84 Ex. 9 at 38.)

Q What is the customer testimony that you claim shows loss of store sales in September of 2001?

A General conversations that I had with customers at all points in time during the months of September and October, some of them even stating that they were going over there buying gas because they couldn't afford to pay my prices and they couldn't understand why.

Q Okay. Can you tell me any specific customers that you talked to and what they said?

A Yes, sir, Buddy Knight.

And he wanted to know why I expected him to do business with me at higher prices when he could go across the road and save 10, 15 cents a gallon.

Q Can you recall any other conversation with a person that you remember in the fourth quarter of 2001 about pricing along the same lines as Buddy Knight?

A Not specifically. I can't remember their names.

Q Can you tell me how many conversations you had with customers complaining about your pricing?

A Hundreds.

Q Did the customers specifically mention Sam's?

A Yes, sir.

Q All of them?

A No, sir.

Q What percentage of them? Do you have a judgment?

A No, sir.

(Doc. # 84 Ex. 9 at 48–52, 57.)

Sam's asserts that these statements are hearsay under Rule 801 of the Federal Rules of Evidence "because they are included in testimony given by a witness who is reciting what others have told him or what he has heard said by others, and they are statements, other than those made by the declarant while testifying, offered in evidence to prove the truth of the matter

asserted." (Doc. # 94 at 2.) As a result, Sam's argues that their inclusion in the court's consideration on summary judgment would violate Rule 56(e) of the Federal Rules of Civil Procedure, requiring that affidavits in support of opposition to summary judgment must be made on personal knowledge and "shall set forth such facts as would be admissible in evidence . . . ." (Doc. # 94 at 1.)

Home Oil does not dispute that the statements in question are in fact hearsay (Pl.'s Resp. to Mot. to Strike, Doc. # 101); ergo the court will not dwell on that issue, but will assume that they are. However, Home Oil claims that because Mr. Shirley identified one customer with whom he had had such a conversation, Buddy Knight, and because some of the testimony was admitted into evidence during the preliminary injunction hearing in this case without objection the testimony is already part of the record and may properly be considered by the court in ruling on summary judgment. (Doc. # 101 at 1–2.)

Sam's counters by asserting that the fact that Mr. Shirley's testimony was admitted during the preliminary injunction hearing in this case without objection is irrelevant. (Def.'s Reply to Pl.'s Resp. to Mot. to Strike, Doc. # 105 at 1.) Sam's points out that declarations and evidence supporting a motion for preliminary injunction need not conform to the stricter standards for a summary judgment motion found in Rule 56(e) because of the urgency involved and the limited duration of a preliminary injunction. *See Flynt Distrib. Co. v. Harvey,* 734 F.2d 1389, 1394 (9th Cir. 1984) (stating that the trial court may give even inadmissible evidence some weight in a preliminary injunction determination when it serves the purpose of preventing irreparable harm before trial because it is difficult to obtain affidavits from persons who could be compelled to testify at trial). Sam's further contends that "Plaintiff

should not be allowed to create otherwise inadmissible evidence for purposes of summary judgment and trial simply by making statements under the more relaxed evidentiary standards of a preliminary injunction hearing." (Doc. # 105 at 2.) The court agrees. *See Sierra Club, Lone Star Chapter v. F.D.I.C.,* 992 F.2d 545, 551 (5th Cir.1993) ("[A]t the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence."); 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2949, at 216–17 (2d ed.1995) (noting that on a preliminary injunction motion "the strict standards of Rule 56(e)" do not apply and even inadmissible hearsay evidence may be considered "in order to serve the primary purpose of preventing irreparable harm before a trial can be had").

Due to the lack of legal authority cited in Home Oil's response, the court can only assume that Home Oil relies on Rule 65(a)(2) of the Federal Rules of Civil Procedure in arguing that the hearsay statements in question are already part of the record in this case. Rule 65(a)(2) states that "any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial." However, Sam's clearly contends that the evidence in dispute would not be admissible at trial, and Home Oil has failed to refute this assertion. Hence, Home Oil may not rely on Rule 65(a)(2).

Furthermore, the Eleventh Circuit has determined that

The general rule is that inadmissible hearsay "cannot be considered on a motion for summary judgment." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990) (citing cases from six Circuits).

Rule 56(e) of the Federal Rules of Civil Procedure requires that "affidavits" that support or oppose summary judgment motions "shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence." This rule also applies to testimony given on deposition. *See Randle v. LaSalle Telecomms., Inc.,* 876 F.2d 563, 570 n. 4 (7th Cir.1989).

Some courts, including our own, appear to have restated the general rule to hold that a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be "reduced to admissible evidence at trial" or "reduced to admissible form." *See Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir.1999) . . . .

We believe that the courts have used the phrases "reduced to admissible evidence at trial" and "reduced to admissible form" to explain that the out-of-court statement made to the witness (the Rule 56(c) affiant or the deposition deponent) must be admissible at trial for some purpose. For example, the statement might be admissible because it falls within an exception to the hearsay rule, or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or is used solely for impeachment purposes (and not as substantive evidence).

*Macuba v. Deboer,* 193 F.3d 1316, 1322–24 (11th Cir.1999) (footnotes omitted).

In *Macuba,* the Eleventh Circuit ruled that the trial court erred in considering deposition and affidavit testimony of a witness who related that he had heard named and unnamed individuals make statements integral to the establishment of the plaintiff's case because (1) it was "rank hearsay;" (2) the statements did not fall under any exception to Rule 802 of the Federal Rules of Evidence; and (3) "even though

the statements . . . might be admissible to impeach [the affiant] . . ., they would not be admissible as substantive evidence." *Id.* at 1322–25; *see also Pritchard v. S. Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir.1996) (affirming grant of summary judgment to defendant where the plaintiff's opposition rested on statements in her deposition that constituted inadmissible hearsay and the hearsay was "not reducible to admissible form at trial").

Applying *Macuba* to the case at hand, the court finds that because Home Oil has argued neither that the challenged statement do not constitute hearsay nor that an exception to the hearsay rule operates to permit admission of Mr. Shirley's repetition of his customers' purported statements, even those made by a named individual, the statements are inadmissible and may not be relied upon in ruling on Sam's summary judgment motion. *See Reeves v. Thigpen,* 879 F.Supp. 1153, 1162 n. 4, 1164–65 (M.D.Ala.1995) (striking portions of an affidavit providing evidence in opposition to a summary judgment motion as based on inadmissible hearsay), *aff'd,* 103 F.3d 147 (11th Cir.1996). Accordingly, the court finds that Sam's Motion to Strike (Doc. # 94) is due to be GRATED to the extent that the deposition and injunctive hearing testimony of Tim Shirley relating to hearsay statements of customers shall be STRICKEN from the evidence in opposition to summary judgment.

## II. Sam's Motion for Summary Judgment

### A. Injury and Causation

Sam's primary contention on summary judgment is that Home Oil has failed to produce sufficient evidence of injury caused by Sam's to support its claim for relief under the AMFMA. Sam's asserts two distinct arguments related to Home Oil's allegations of injury in its motion: (1)

Home Oil's claim of lost sales volume fails to establish injury under the Act, and (2) Home Oil has produced no evidence that its claimed loss of sales volume at Hobo 17 was caused by Sam's below-cost pricing. (Doc. # 68 at 9–18.)

Section 8–22–6 of the AMFMA states: It shall be unlawful for any person engaged in commerce in this state to sell or offer to sell motor fuel below cost or to sell or offer to sell it at a price lower than the seller charges other persons on the same day and on the same level of distribution, within the same market area, where the effect is to injure competition.

In *State ex rel. Galanos v. Mapco Petroleum, Inc.*, the Alabama Supreme Court held that a prima facie case for violation of the AMFMA is established when the plaintiff "proves a sale below cost and an injurious effect on competition." 519 So.2d 1275, 1286 (Ala.1987). In *McGuire Oil Co. v. Mapco, Inc.*, the Supreme Court of Alabama, held that "injury to *a competitor* suffices to establish a violation of the AMFMA." 612 So.2d 417, 422 (Ala.1992) (emphasis added). It reached this conclusion by analyzing the holdings of several earlier Alabama cases interpreting the AMFMA. *Id.* at 421–22 (citing *Star Serv. & Petroleum Co. v. State ex rel. Galanos*, 518 So.2d 126 (Ala.Civ.App.1986), and *Money Back, Inc. v. Gray*, 569 So.2d 325 (Ala.1990)).

In *Star Service*, the court determined that the testimony of the owner of one of the defendant's competitors that she was " 'actually losing money' " as a result of the defendant's below-cost sales and the testimony of an officer of another competitor that the defendant's actions had " 'definitely injured [his] business' " were sufficient to establish that the defendant had injured competition as required by the Act. 518 So.2d at 129. In *Money Back*, the Alabama Supreme Court upheld the trial

court's determination that the defendant had violated the AMFMA by causing injury to a competitor where the competitor showed actual damages for a three-month period in 1986 when it had attempted to meet the defendant's illegal below-cost prices "by comparing [its] financial statements for the same three months of 1985 and 1986." 569 So.2d at 328.

1. *Injury*

■ In its first contention, Sam's argues that a demonstration of lost sales volume alone does not establish sufficient injury because such lost volume does not indicate a similar loss in profits, which, among other unnamed harms, is the type of harm required to be shown by the AMFMA. (Doc. # 68 at 9.) The court is not persuaded.

Because the AMFMA does not specifically define "injury," the general rules of statutory construction may be applied to determine the meaning of the term. Under Alabama law, the intent of the legislature must be considered in construing a statute and its terms.

[T]hat intent may be gleaned from considering the language used, the reason and necessity for the act, and the goals sought to be accomplished. *McClain v. Birmingham Coca–Cola Bottling Co.*, 578 So.2d 1299 (Ala.1991). Words in a statute should be given their plain, ordinary, and commonly understood meaning, *unless there is a specific statutory definition. Childers v. Morgan County Bd. of Education*, 465 So.2d 428 (Ala. Civ.App.1985).

*McGuire*, 612 So.2d at 422. The court notes that section 8–22–6 does not say "financial" or "monetary" injury, and the common meaning of "injury" is "[a]ny wrong or damage done to another, either in his person, rights, reputation, or property." Black's Law Dictionary 785 (6th

ed.1990). This does not support Sam's apparent assertion that proof of monetary or financial injury is a requirement to prove a violation of the AMFMA.

*Star Service* and *Money Back* indicate that the requirement to show an injury on the part of a competitor sufficient to establish a violation of the AMFMA is not a Herculean task. The mere testimony of a competitor that he had been injured, without supporting evidence, was deemed enough in *Star Service*, and the comparison of economic position from one year to the next was accepted in *Money Back*. The court also notes that, while the Supreme Court of Alabama has ruled that "market share is not relevant in determining the existence of injury to competition," *McGuire*, 612 So.2d at 422, no such prohibition has been placed on the use of lost sales volume.

In this case, Home Oil has made a specific showing of lost sales volume following the opening of Sam's facility and its alleged below-cost sale of gasoline, as compared to the year prior. (Doc. # 84 Ex. 8.) It requires no great stretch of the imagination to assume that such a loss in sales volume would likely be accompanied by lost profit margins. Home Oil points out that it is not seeking specific monetary damages in this suit, in which case it might be required to make a more explicit showing of financial injury in order to overcome a motion for summary judgment. (Doc. # 83 at 9.) The court is convinced that this showing, while scant, is sufficient to establish the existence of a genuine of issue of material fact which must be resolved at trial. Therefore, Sam's is not entitled to summary judgment on this issue.

## 2. Cause of Injury

Sam's second contention, that Home Oil has produced no evidence that its claimed loss of sales volume at Hobo 17 was caused by Sam's below-cost pricing, must fail for similar reasons. Sam's claims that to establish that it has been injured by Sam's alleged below-cost pricing, Home Oil must examine four elements—correlation, causation, form of injury, and amount of injury. (Doc. # 68 at 11.) These elements, however, were not established by law, but by Sam's own expert, Dr. John Siegfried, who appears to have analyzed each element in this case and determined that Sam's pricing strategy did not injure Home Oil. (*Id.* at 11–18.)

The gist of Sam's argument is that many other variables could be responsible for Home Oil's lost sales volume, including: (1) chance; (2) competition from competitors other than Sam's; (3) Home Oil's own pricing/marketing strategy, as evidenced by a long-term trend in declining sales volume at Hobo 17 that began before Sam's opened up shop; and (4) general trends in consumer driving and gasoline-buying habits.[2] While these arguments provide food for thought, it must be remembered that the main issued in an AMFMA case is whether the defendant violated the Act by selling gasoline below cost. If so, and a competitor can show resulting injury, it is not enough for the violator to say simply that the injury could have been caused by other factors, especially when the illegal acts of the violator have directly affected those same factors. Furthermore, Sam's supporting evidence is based entirely on Dr. Siegfried's affida-

---

**2.** The court notes that Sam's/Dr. Siegfried's contentions that Home Oil's lost sales volume is too statistically insignificant to show injury to competition and that Home Oil would have to show that its profits were reduced so much by Sam's illegal pricing "as to threaten its viability" are so patently out of sync with Alabama law, as explained in *McGuire* and the other cases interpreting the AMFMA, as to merit no further consideration by this court. (Doc. # 68 at 11–12, 16–18.)

vit, the credibility of which has been called into question by Home Oil. (Doc. # 83 at 10–15; Doc. # 93.)

Despite Sam's arguments, Home Oil has provided evidence that it suffered consistent volume losses at Hobo 17 after the Sam's facility opened, as compared with the months prior. (Doc. # 84 Ex. 8.) This exhibit shows that, but for one month (January, 2001), Home Oil's sales volumes were lower every month for the twelve-month period after Sam's opened than they were for the corresponding month during the twelve-month period before Sam's opened. Home Oil's President also stated that he attributed this loss in volume to Sam's below-cost pricing. (Doc. # 84 Ex. 1 at 99–100.) Even excluding the customer hearsay testimony discussed above, the court finds that Home Oil has provided enough evidence to establish the existence of a genuine of issue of material fact as to whether its injury was caused by Sam's illegal pricing, which must be resolved at trial. Therefore, Sam's is also not entitled to summary judgment on this issue.

### B. Civil Penalties

In its Complaint, Home Oil seeks the imposition of civil penalties against Sam's for violations of the AMFMA under section 8–22–16 of the Alabama Code. (Doc. # 1 at 6.) In its summary judgment motion, Sam's argues that Home Oil lacks standing to sue for civil penalties under section 8–22–16, which states:

(a) Any person who violates this chapter shall be subject to a civil penalty not to exceed ten thousand dollars ($10,000) per violation for each offense. Any such person shall also be liable for attorney fees and shall be subject to injunctive relief. Each day that a violation of this chapter occurs shall be considered as a separate violation.

(b) The penalty may be assessed and recovered in a civil action brought by the Attorney General, or by any district attorney in any court of competent jurisdiction. If brought by a district attorney, 30 percent of the penalty shall be paid to the office of the district attorney which brought the action and 70 percent of the penalty shall be paid to the treasury of the county in which the judgment was entered. If brought by the Attorney General, one-half of the penalty shall be paid to the treasury of the county where the action was brought and one-half shall be paid to the State Treasury.

Sam's reads subsections (a) and (b) together to mean that, while a violator is "subject to a civil penalty" for each offense, the penalty may only "be assessed and recovered in a civil action brought by the Attorney General, or district attorney." (Doc. # 68 at 19–20.) Because section 8–22–17, which provides for remedies in a private action, makes no mention of civil penalties, and because section 8–22–16 makes no mention of a private right of action for civil penalties, Sam's claims that such a right cannot be implied and, therefore, Home Oil lacks standing to pursue a claim for civil penalties. ( Doc. # 68 at 19–22.)

On the other hand, Home Oil claims that it does have standing to sue for civil penalties because subsection (a) of section 8–22–16 states that in addition to the civil penalty, violators of the Act "shall also be liable for attorney fees and shall be subject to injunctive relief." Home Oil claims that because the Attorney General and district attorneys may not seek attorney's fees, subsection (a) indicates that civil penalties may be assessed against a violator in a private action as well as in a government action; subsection (b) simply explains how to apportion the penalty if it is assessed in

a case brought by the Attorney General or a district attorney. (Doc. # 83 at 30–31.) In support of its argument, Home Oil cites *Campbell & Sons Oil Co., Inc. v. Murphy Oil USA, Inc.*, No. CV–99–S–3176–NE, slip op. (N.D.Ala. May 7, 2001), a similar case brought by private parties against a company the court determined had violated the AMFMA, in which the court assessed civil penalties against the defendant. *Id.* at 24 & n. 55 (relying on the same reasoning as that made by Home Oil in this case and determining, without the benefit of supporting authority, that "a person who violates the Act is subject to a civil penalty regardless of whether the action is brought by private plaintiff or by one of the State's attorneys").[3]

Because neither the Alabama Supreme Court nor the Alabama Court of Civil Appeals has yet had the opportunity to rule on the question of whether a private party has standing to sue for civil penalties under the AMFMA, this court must determine which of the parties' arguments is correct. In so doing, the court is guided by several well-established principles of statutory construction.

'The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute.' *IMED Corp. v. Systems Eng'g Assocs. Corp.*, 602 So.2d 344, 346 (Ala.1992). In interpreting a statute, '[w]ords used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.' *Id. See also Ex parte Pfizer, Inc.*, 746 So.2d 960, 964 (Ala.1999); *Blue Cross & Blue Shield v. Nielsen*, 714 So.2d 293, 296 (Ala.1998); *Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa County*, 589 So.2d 687, 689 (Ala.1991); *Town of Loxley v. Rosinton Water, Sewer & Fire Protection Auth., Inc.*, 376 So.2d 705, 708 (Ala.1979). 'If the language of [a] statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.' *IMED Corp.*, 602 So.2d at 346.

*Ex parte Cove Props., Inc.*, 796 So.2d 331, 333–34 (Ala.2000). Added to this is the rule "that the AMFMA must be strictly construed in [the defendant]'s favor and against [the plaintiff] because penalties that may be assessed under the AMFMA render it penal in nature." *Young Oil Co. v. Racetrac Petroleum, Inc.*, 757 So.2d 380, 383 (Ala.1999) (quoting and agreeing with the trial court's opinion). Furthermore, "no person is to be made subject to penal statutes by implication and all doubts concerning their interpretation are to predominate in favor of the accused." *Clements v. State*, 370 So.2d 723, 725 (Ala.1979), *overruled on other grounds by Beck v. State*, 396 So.2d 645 (Ala.1980).

In this case, Sam's expends great effort in convincing the court that Alabama law does not allow the reading of a private right of action into a statute that does not expressly provide for one. However, the court requires no such persuasion. The AMFMA expressly provides for a private right of action in section 8–22–17, which allows a private party who has been injured by or who "would suffer injury from any" violation to maintain a court action for injunctive relief and to recover the costs of suit, including attorney's fees, as well as actual and treble damages, if damages are asserted. No mention is made in section 8–22–17 of a private party's entitle-

---

**3.** The court notes that the unpublished decision of another federal district court sitting in Alabama is not binding on this court.

ment to civil penalties. Furthermore, while section 8–22–16 explains in detail how civil penalties are to be assessed and distributed in actions brought by the Attorney General and/or district attorneys, it fails to make any mention of private plaintiffs' entitlement to such penalties.

The court finds the language of the AMFMA unambiguous as regards civil penalties, which are not recoverable by private parties. Furthermore, even if the language of the statute were less than clear, Alabama law requires strict construction of the provisions in Sam's favor. Reading the statute as Home Oil would have it would require the court to extend the language of the statute beyond its plain meaning. Hence, because neither section 8–22–16 nor 8–22–17 specifically allows for the assessment of civil penalties against a defendant in a case brought by a private plaintiff, none may be inferred. Because the court has determined that Home Oil does not have standing to sue for civil penalties under the AMFMA, Sam's is entitled to summary judgment with respect to its liability for civil penalties.

### C. Meeting a Competitors' Advertised Prices

■ Sam's claims that it is entitled to summary judgment on its claim for declaratory judgment that it is entitled to meet a competitor's advertised prices, including credit card rebates. (Doc. # 68 at 23.) Specifically, Sam's claims that under section 8–22–8(b) of the AMFMA it is entitled to meet the price of gasoline sold by a Shell retailer in the same market area as Sam's station, calculated to include the rebate offered to customers purchasing gasoline with a Shell/Chase Bank credit card. (*Id.*)

Section 8–22–8(b) reads as follows:

It is not a violation of this chapter if any price is established in good faith to meet an equally low price of a competitor in the same market area on the same level of distribution selling the same or a similar product of like grade and quality or is exempt under Section 8–22–13.

The court notes that this section provides a defendant with an affirmative defense to the accusation that it violated the AMFMA during the alleged period of time a plaintiff claims the statute was violated. *See McGuire*, 612 So.2d at 423–24 (acknowledging that section 8–22–8(b) may be used as an affirmative defense). However, the court finds that there is no evidence upon which Sam's could rely in this case to show that its gas-pricing acts during October of 2001 were done for the purpose of meeting competition. Home Oil has provided evidence that Sam's did not know about the Shell pricing scheme until after the period of time Home Oil accuses it of violating the Act (Doc. # 83 at 17–20; Doc. # 84 Ex. 2 at 54–68), and Sam's has not disputed this allegation.

This court has previously ruled that the "good faith" language contained in the statute "contemplates that the business must actually know of a competitor's price before establishing a below-cost price in response to it." (Doc. # 31 at 16–17.) In addition, the Alabama Supreme Court's ruling that a defendant cannot invoke the meeting-competition defense when it prices its fuel one or two cents below the price set by a competitor, also indicates a knowledge requirement to invoke this defense. *See McGuire*, 612 So.2d at 423 (stating that section "8–22–8 should not be used offensively to ensure that a defendant's price of gasoline will always be below its competition"). As a result, it is settled that Sam's may not rely on a *post hoc* meeting-competition *defense* in this case.

It appears instead that Sam's asserts that this court should rule *prospectively*

that it is entitled in future to violate the AMFMA in order to meet Shell's advertised price, including the rebate. But this issue is not properly before the court.

When it filed its Motion for Leave to Amend Answer to Complaint to Include Counterclaim for Declaratory Relief (Doc. # 41), Sam's asserted that there was an actual controversy between it and Home Oil as to its obligations under the Preliminary Injunction entered in this case on May 3, 2002 (Doc. # 36), regarding its ability to meet Shell's rebated price. However, the preliminary injunction entered by the court does not specifically prohibit Sam's from meeting Shell's rebated price, and it specifically allows it to sell below cost if it does so under the terms of section 8–22–8(b). (Doc. # 36 ¶ 5.) As a result there is no dispute between Home Oil and Sam's as to whether Sam's may assert a meeting-competition defense-both agree it may not-and there is no pertinent dispute at all between the parties as to Sam's prospective right to match Shell's rebated price. It appears that Sam's merely desires to have this court rule on an issue that is not central to the outcome of this case and rightly must involve parties not represented in this suit, in contravention of the Federal Rules of Civil Procedure. Accordingly, Sam's is not entitled to summary judgment on its counterclaim, and, furthermore, any evidence presented at trial will be limited to the conduct of the parties during the period of any alleged violation.

### D. Constitutional Claims

In addition to the claims discussed above, Sam's argues that it is due to be granted summary judgment on two constitutional grounds. First, Sam's claims that the Alabama Supreme Court's holding in *McGuire Oil Co. v. Mapco, Inc.* that injury to a competitor suffices to establish a violation of the AMFMA is unconstitutional because such a reading is not reasonably designed to accomplish the purpose of the AMFMA with no more infringement on individual rights than is reasonably necessary, as required by sections 1 and 35 of the Alabama Constitution. (Doc. # at 27–33.) Second, Sam's asserts that if the AMFMA does not allow it to include memberships fees in calculating the price of gasoline sold to Sam's members, it is unconstitutionally vague.

### 1. *McGuire Oil Co. v. Mapco, Inc.*

■ In 1987, the Supreme Court of Alabama considered the question of the AMFMA's constitutionality. *See Galanos*, 519 So.2d at 1275–88 (Ala.1987). The court stated that, "on its face," the Act was within the powers granted to the state legislature under Article IV, § 103 of the Constitution of Alabama of 1901. *Id.* at 1276. The court went on to conduct an extremely thorough analysis of the constitutionality of the Act under section 1 and 35 of the Constitution of 1901, at the conclusion of which the court outlined the standard of review of the constitutionality of the AMFMA and like statutes: "Generally speaking, the test is whether the legislation is designed to accomplish an end within legislative competence and whether the means it employs are reasonably designed to accomplish that end without unduly infringing upon protected rights." *Id.* at 1284. The *Galanos* court ultimately determined the AMFMA, as it related to the retail marketing of motor fuel, was constitutional, with the exception of section 8–22–18, which it struck down. *Id.* at 1287.

Five years after the publication of the *Galanos* decision, the Alabama Supreme Court received the following certified question from the Eleventh Circuit Court of Appeals: "DOES THE AMFMA REQUIRE INJURY TO COMPETITION AS A PREREQUISITE TO LIABILITY UN-

DER THAT ACT, OR DOES INJURY TO COMPETITORS SUFFICE TO ESTABLISH LIABILITY?" *McGuire*, 612 So.2d at 419. After analyzing Alabama law on the issue, including the *Galanos* case, the court held "that injury to a competitor suffices to establish a violation of the AMFMA." *Id.* at 422.

Sam's first argument is that the *McGuire* holding is unconstitutional under the facts of this case because such an interpretation of the Act renders it too broad and not reasonably designed to accomplish the purpose of the AMFMA with no more infringement on individual rights than is reasonably necessary, as required by sections 1 and 35 of the Alabama Constitution. Sam's urges that the Alabama Supreme Court's earlier decision in *Galanos* "suggested that there must be an intent to injure more than one competitor." 519 So.2d at 1279 Sam's goes on to assert that "the *McGuire* opinion does not include consideration of the broader purpose of the AMFMA [ (to prohibit monopoly and its accompanying harms) ], any constitutional analysis of its interpretation under § 1 and 35[sic], or the realities of real-world market competition in the gasoline market." (Doc. # 68 at 30.) If it had, Sam's argues, the *McGuire* court would have concluded that its decision was unconstitutional in all but the rarest circumstances, where "the market is comprised of only two or three rivals and there are substantial barriers to entry in the market." (*Id.*)

Essentially, Sam's asks this court to adopt an extremely narrow interpretation of the Alabama Supreme Court's *Galanos* opinion, so narrow in fact that it would render the court's subsequent ruling in *McGuire* unconstitutional under Alabama's constitution. This court is convinced that this construction is neither required nor appropriate, especially considering the Supreme Court's pronouncement that "the views of the state's highest court with respect to state law are binding on the federal courts." *Wainwright v. Goode*, 464 U.S. 78, 84, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983) (citing *Brown v. Ohio*, 432 U.S. 161, 167, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)); *Garner v. Louisiana*, 368 U.S. 157, 169, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961). "Questions of interpretation of state statutes are within the special authority of the state supreme court, and our review is limited to the question of whether the state procedure passes [federal] constitutional muster." *Hudson v. Deyton*, 770 F.2d 1558, 1561–62 (11th Cir.1985) (quoting *Williams v. Wainwright*, 650 F.2d 58, 61 (5th Cir. 1981)).

The court notes that the *McGuire* opinion makes no mention of the constitutionality of its construction of the AMFMA, or of sections 1 and 35 of the Alabama Constitution specifically. However, the *McGuire* court liberally refers to its decision in *Galanos* in its analysis, and specifically considered the argument "that *Galanos v. Mapco* provides that 'an injurious effect upon competition' is an essential element of an AMFMA violation, as opposed to a mere intent to injure individual competitors." *McGuire*, 612 So.2d at 421. In fact, Justice Maddox dissented from the majority opinion in *McGuire* precisely because he supported the position asserted by Sam's in this case, that *Galanos* required an injurious effect upon competition and not merely injury to an individual competitor. *Id.* at 424. As a result, this court believes that the Alabama Supreme Court's decisions in *Galanos* and *McGuire* may be read together to uphold the constitutionality of the *McGuire* holding that "injury to a competitor suffices to establish a violation of the AMFMA." *Id.* at 422. Sam's is therefore not entitled to summary judgment as a matter of law on this issue.

## 2. Vagueness

■ Sam's second constitutional argument is that because this court has previously ruled that Sam's membership fees may not be calculated as part of a combined sale under section 8–22–10, "the AMFMA is unconstitutionally vague because it is penal in nature and fails to define price under the statute in language sufficiently definite and certain to inform a person of ordinary understanding what course of conduct he may lawfully pursue." (Doc # 68 at 33.)

In its order of April 26, 2002, providing for the issuance of a preliminary injunction in this case, Judge Thompson ruled that

> The basic problem with the defendant's argument is that the combined-sale statute does not even apply to this sort of transaction. It is difficult to square the purchase of a membership by the consumer and a later purchase of goods with the "combined price" language in the statute, 1975 Ala.Code § 8–22–10. One transaction entitles the consumer to make the second transaction. And while that entitlement, apparently, is the major argument for combining the two transactions for purposes of the statute, they are two still different and separate transactions. There is simply no combined price.
>
> Moreover, it is clear from the AMFMA's codified "legislative findings" that the intent of the statute is not to bless this sort of transaction, where the below-cost sale of gasoline is insulated from illegality by wide-scale aggregate sale of other goods at or above cost. These legislative findings provide:
>
> "Unfair competition in the marketing of motor fuel occurs whenever costs associated with the marketing of motor fuel are recovered from other operations, allowing the refined motor fuel to be sold at subsidized prices.... Such subsidies most commonly occur ... where a business uses profits from nonmotor fuel sales to cover losses from below-cost selling of motor fuel."
>
> 1975 Ala.Code § 8–22–8. Therefore, in line with the intent and the language of the AMFMA, the court concludes that the combined-sale statute does not apply to the instant situation, involving a membership and a later sale of discounted gasoline.
>
> To be sure, the combined-sale statute expressly allows some combination of fuel and non-fuel products as part of advertising. But the court refuses to expand this limited exception, for such things as "gift" and "coupons," to essentially swallow, as the defendant would have it, the whole rule or prohibition itself. For then the exception would no longer be an exception but the rule itself, and one of the AMFMA's core prohibitions, against "us[ing] profits from nonmotor fuel sales to cover losses from below-cost selling of motor fuel," 1975 Ala.Code § 8–22–2, would be gutted.

(Doc. # 31 at 11–13 (footnotes omitted).)

In its summary judgment motion, Sam's "acknowledges that the statute does not provide a method for calculating price and cost where a pre-paid membership is a precondition to the sale of gas," but it "maintains that while the statute may not provide a method for such calculations, the membership fee cannot be ignored." (Doc. # 68 at 34–35.) It concludes that "[i]f the AMFMA is interpreted to prevent Sam's from applying membership fees to the Member Price of gasoline, then the AMFMA is unconstitutionally vague in light of Ala.Code § 8–22–4(5)'s reference to 'buying pools,'" and section 8–22–10's reference to combined sales. (Doc. # 68 at 35.)

The Supreme Court of Alabama has previously had the opportunity to address a vagueness challenge to the AMFMA. In

*BP Exploration & Oil, Inc. v. Hopkins,* the court stated

"'For [the statute] to constitute a deprivation of due process, it must be "so vague and indefinite as really to be no rule or standard at all."'" *Friday v. Ethanol Corp.,* 539 So.2d 208 (Ala.1988), quoting *Exxon Corp. v. Busbee,* 644 F.2d 1030 (5th Cir.1981), cert. denied, 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981). While BP construes the AMF-MA differently from the way the plaintiff construes it, the fact that the parties have construed it differently does not render the statute unconstitutionally vague. As this Court recognized in *Friday v. Ethanol Corp.,* supra, "[t]hese attempts at statutory construction illustrate that [the statute] is ... at least amenable to some sensible construction. Thus, it does alert the parties to the character of the prescribed conduct ... and does amount to something more than "no rule ... at all."'" 539 So.2d at 213–14.

678 So.2d 1052 (Ala.1996).

The court finds *Hopkins* instructive and points out to Sam's that merely because it does not agree with Home Oil or the court as to the construction of section 8–22–10, does not mean that the statute is so vague and indefinite as to be no rule at all. In fact, the court has stated that the statute's main purpose is to prohibit precisely the type of conduct Sam's declares it must include. Accordingly, Sam's motion for summary judgment on this issue is due to be DENIED.

### CONCLUSION

For the foregoing reasons, it is hereby ORDERED that

(1) Sam's Motion to Strike (Doc. # 94), filed November 20, 2002, is due to be GRANTED to the extent that the deposition and injunctive hearing testimony of Tim Shirley relating to hearsay statements of Home Oil's customers shall be STRICKEN from the evidence in opposition to summary judgment.

(2) Sam's Motion for Summary Judgment (Doc. # 67), filed September 30, 2002, is GRANTED with respect to its assertion that Home Oil does not have standing to sue for civil penalties under the AMFMA, but it is DENIED in all other respects.